## DALHEIM *v.* LEMON *et al.*

### (*Circuit Court, D. Minnesota, Fourth Division.* March 7, 1891.)

1. MASTER AND SERVANT—INJURIES TO CONVICT EMPLOYE—CONVICT LABOR.

   In the year 1888 the defendants entered into a contract with the state of Minnesota to erect a building forming part of the state-prison at Stillwater. In the erection thereof, by arrangement between the prison authorities and the defendants, the labor of the plaintiff, who was a convict in state-prison, was availed of, the benefit thereof going to the defendants. By the fall of a scaffold on which plaintiff was standing while engaged in plastering the interior of the building, the plaintiff was injured, and, upon the expiration of his sentence, he brought suit against the defendants to recover for the injuries caused by the fall of the scaffold. *Held,* that the provisions of the act of the legislature of Minnesota, approved March 8, 1887, forbidding the farming out of convict labor, would *not* prevent the relation of master and servant from existing between the parties, if the defendants knowingly received the benefits of plaintiff's labor; and that the fact that plaintiff, being a convict, was not entitled to compensation for his labor, was immaterial.

2. SAME—DAMAGES—DISABILITY DURING PERIOD OF IMPRISONMENT.

   *Held, further,* that, so far as the injury affected plaintiff's ability to labor during the period of his imprisonment, he could not recover therefor.

At Law.

*Arctander & Arctander,* for plaintiff.

*Fayette Marsh,* for defendants.

SHIRAS, J., (*orally charging jury.*) In this case of Charles Dalheim vs. F. A. Lemon and others, composing the defendant firm, the plaintiff

seeks to recover damages against the defendants to compensate him for injuries which he alleges were caused to him by an accident in falling from a scaffold, which accident, it is charged in the petition, was due to the negligence of the defendants. On the part of the defendants, negligence is denied, and it is also averred upon their behalf that the plaintiff himself contributed, by want of proper care upon his part, to this accident, and that he, therefore, cannot recover. You will see, gentlemen, that the case, therefore, is one which is based upon a charge of negligence. In other words, the questions presented and to be determined by you turn upon these allegations made by the respective parties of negligence against the defendants, and against the plaintiff. Before passing to the particular questions which the case presents, and which it is necessary for you to consider and determine, perhaps it would be well for me to advise you as to the rules of law that apply generally to cases of master and servant, or employer and employe. The general rule is, as has been stated by counsel in your hearing, that an employer or master is charged with the duty of furnishing the servant or employe a reasonably safe place and safe appliances in which and with which to do the work required of him. The law requires the master or employer to exercise ordinary care to furnish a safe place and safe appliances. Now, what is meant by ordinary care is that amount of skill, prudence, and foresight that ordinarily prudent men should exercise under the like circumstances; and, where those circumstances are such that they may involve the life or limb of human beings, the amount of skill and foresight that ordinary prudence requires should be exercised is greater that when human life or limb are not put in jeopardy. The general rule, however, is, as I have stated, that the master or employer is required to exercise ordinary prudence; that degree of prudence and care that ordinarily prudent men should exercise, under like circumstances, in furnishing a safe place and safe appliances for the employe or servant to work with. If the master fails in that, then he is in law deemed to be guilty of negligence, because negligence is the failure to exercise the degree of care and prudence which the law exacts under the facts of a given case. There is a correlative duty also placed upon the servant or employe. He also is required to exercise upon his part the same degree of care,—that is, ordinary care; such a degree of care as an ordinarily prudent man should exercise for his own protection. The master or employer is not a guarantor, absolutely, of the safety of the servant or employe. It is not, therefore, sufficient in cases of this kind for the plaintiff to show that he was in the employ of the defendant at a given time, that the accident happened, and that he received an injury. Persons who enter into any employment take upon themselves the burden and risk of those hazards, risks, and dangers that ordinarily pertain to the business, when properly carried on. They do not assume the risks and hazards that are caused by the negligence of the master or employer. But they do assume all the risks and hazards that pertain to the business when it is carried on in an ordinarily prudent way. Therefore, as I said to you in the opening, this is a case that turns upon this question or charge of negligence.

In applying these general rules to the class of cases that we have before us here, there is this modification or matter that is to be taken into account. As I have said, the duty and obligation is upon the master to use "ordinary care," as I have defined it to you, to furnish a safe place for the employe to work in. If, for instance, in a given case, the work that is to be done is putting plastering upon a building, or erecting a building, and it is necessary, in order to enable the employe to reach the place where he has to do the work, that a scaffold should be built for him to stand upon, ordinarily and primarily the duty is upon the master to use the degree of care that I have named, to erect a proper and safe scaffold or place upon which the employe may place himself or stand, when he is engaged in the work that is required at his hands. But, if it appears in a given case that the servant or the employe himself is the one who puts up the scaffold, or engages in putting it up with others, so that he himself is responsible in whole or in part for the character of the scaffold, then, although it may turn out that the scaffold was insufficient, and that there was negligence in putting it up, nevertheless if, under the facts of a given case, it appears that the employe himself is responsible also, as well as the master, for this insufficient condition of the scaffold, then we have a case for the application of the rule of what is termed in law "contributory negligence." And that principle is this: that the law does not attempt to separate the consequences, where an accident has occurred through the co-acting negligence of two parties. If the defendant is negligent, and the plaintiff also is negligent, and through the combined effect of the negligence of both parties an accident happens, then neither party can recover against the other. The law does not undertake to separate out, or try to find out, who is in the greater fault or the lesser fault. But the principle of the law is that where the negligence of both parties contributes to the producing of the accident, then neither one can call the other to account, but each party must bear whatever the consequences may have been to him of the particular accident. Therefore, as I have said, when in a given case the work that is to be done requires the erection of scaffolding, primarily the duty and obligation is upon the master to use ordinary care; that degree of care that should be exercised in the erection of a scaffold of that particular kind; to use ordinary care to see that it is erected, so that it will furnish a reasonably safe place for the employe or servant to work upon. Then, upon the other hand, if in the given case it appears that in the erecting of the scaffold the employe himself was engaged in it, while in a general sense it is true the scaffold is erected for the master, and to be used in carrying out the business of the master, nevertheless, if the employe or servant himself was the one who put the scaffolding up, or aided in doing so, so that it was partly through his negligence that the scaffold was insufficient, then, as I have said, we have a case presented of what is known in law as a case of "contributory negligence," and that would defeat the right of the employe to recover, even though he may have received an injury by the scaffold falling down.

In all cases, gentlemen, in which human testimony is brought before a jury, they are called upon to determine the credibility of the witnesses, and the weight of their testimony. And the general rule is that, where witnesses are brought before you, you view their demeanor, their mode of testifying, their frankness or want of frankness, whichever it may be, and you have a right to take into account the means of knowledge that they have. You have a right to take into account, in determining their credibility, what interest, if any, they may have, pecuniary or otherwise, in the event of the suit. You have a right to take into account the circumstances that have been developed in the trial of the case before you that affect the general character and moral reputation of the witnesses, as affecting their character for truth and veracity. Therefore if, in a given case, it appears that any of the witnesses who are brought before you have been convicted of a serious crime, that is a matter that parties are entitled to prove as a matter of fact before the jury, and it is for the jury to take that fact into account in determining upon the credibility of a given witness. · But, taking into account all the facts and circumstances that have been developed in a given case, it is for the jury, applying and giving due weight to these considerations, to determine the credibility of the witnesses, and what weight is to be given to their testimony.

In this particular case, gentlemen, now on trial before you, there is no conflict in the testimony as to many of the facts. There is no conflict in the evidence, and it is not questioned between the parties that the defendants, as a firm, had a contract for the erection of the building that was known as the "Solitary Building," or "Solitary-Cell Building," in the state-prison at Stillwater, in this state, and that this building was in the process of erection in the month of October, 1888. There is no conflict in the evidence, and no dispute between the parties but that the plaintiff was at that time an inmate of the state-prison, being there serving out a sentence upon a conviction that had been had against him in a court in this state. He was therefore a convict; an inmate of the state-prison. There is no conflict in the evidence, either, gentlemen, that he was engaged about the 10th day of October, 1888, at the time of the happening of this accident, in and about the plastering of this building, or the cells that were in it; this building that is spoken of as the "Solitary-Cell Building." There is no conflict either in the evidence, gentlemen, but that at the time named he went upon the scaffold that was erected in that building; that the scaffold broke and fell down; and that the plaintiff fell through to the floor below, and received an injury of greater or less extent. Upon those matters, as I have said, there is really no dispute between the parties.

The first question in dispute is as to whether or not the plaintiff has made out the charge of negligence against the defendants upon which he seeks to recover. Some question has been made in the course of the trial as to the relation which really existed between the plaintiff and the defendants; whether or no, under the facts and circumstances that surrounded the parties, it could be said, as a matter of law, that this rela-

tion of master and servant or employer and employe existed, so that the general rule that I have already mentioned in your hearing could be held applicable to the case; and reference has been made to a statute that has been passed by the legislature of the state of Minnesota regulating convict labor,—a statute which in general terms was passed for the purpose of preventing labor from being contracted out to other parties, thus enabling them to obtain cheap labor, and thus get an advantage over other persons who are compelled to have their work done by laborers who were not convicts, and who are entitled to charge, of course, the full market price for their labor. But I charge you in this case, gentlemen, that this statute does not affect the case. The evil which was intended to be remedied by that statute is not a matter that is involved in this case. No matter what that statute may be, if in fact the relation of master and servant, or employer and employe, did exist between the plaintiff and defendants, then their rights are to be determined by that fact, regardless of the existence of this statute.

Now, gentlemen, assuming that you will find from the evidence that the defendants were engaged in this business of putting up this solitary-cell building, and that in process of carrying on the work the necessity arose that they should have plastering done upon the walls of the building, then, if in the doing of that they directly, or through their agent or person representing them, procured the labor and services of the plaintiff, and the other convicts who were there, to go upon that building and do that work, and the work was done for the defendants, then the work that was done by the plaintiff and the other convicts that were working with him was done in carrying out the contract which the defendants had entered into for the erection of that building; and, if that was done with the knowledge of these defendants or the person who may have represented them in the doing of that work, those facts, if proven, would justify you in finding that the relation of employer and employe or master and servant did exist between the parties at that time.

Some reference has been made to the fact that the plaintiff, by reason of his being a convict, had lost his right to charge for his services; to contract for pay, or to receive pay. It seems to me, as I have already said to you, that that cuts no figure in this case. It is not a question as to whether or no the plaintiff stood in such a position that he himself could directly receive the money value of his services. The relation of master and servant can be created by reason of the fact that the defendants received the value of the labor of the plaintiff. If the relation was such that the work that the plaintiff did was received by the defendants for their benefit, then you see, really and in fact, the plaintiff was working for the benefit of the defendants. Now, when that relation exists, if one person is working for the benefit of another, and that other person is receiving the benefit of that labor, is going to receive it, and in fact does receive it, that will create the relation of employer and employe. The case stands just as it would in the case of a minor. You know, gentlemen, that under the general principles of the common law a person who is under age is not entitled to the proceeds of his labor, except-

ing under certain circumstances. The parent or guardian is the one who is entitled to receive pay for the services rendered by the minor. The minor cannot claim it; cannot get the money. It must be paid over to the guardian or to the father. Yet it does not follow because a minor person goes into the employ of another to work for him, although he cannot sue and recover for his wages, and although his wages would be payable to somebody else, that does not take the minor out from the protection of the law, nor relieve the master or employer from the duty that is imposed upon the master or employer of furnishing a reasonably safe place for their employes to work. Therefore, gentlemen, this case is to be viewed, as I have already said to you, as all other cases are that arise between the employer and the employe, or the master and servant, provided you find under the evidence in the case that the plaintiff was engaged upon the work under such circumstances as that the benefit of his labor went to the benefit and advantage of the defendants.

Assuming, then, that you will find under the evidence in this case that this relation did exist between the parties, then the inquiry is, first, what was the duty and obligation that lay upon these defendants in regard to this scaffolding? The law upon that subject I have already given you; that if this work was to be done, if this plastering was required to be done upon the walls of this building, and the defendants were engaged in having it done, and if the circumstances were such as that their employes or their servants, those who were working for them, would have to have a scaffolding built for them to go upon in order to enable them to' reach up upon the walls, then primarily the duty was upon the defendants to use ordinary care to see to it that a reasonably safe scaffolding was erected. If they did use that ordinary care, did use ordinary skill and foresight in the putting up of that scaffold, used proper materials in building it, and built it in such a way as that it would be reasonably safe, if they did use that degree of care, and nevertheless the accident happened, then, as I have said, it would be an accident that was not due to the negligence of the defendants. It would be then what we call a "pure accident," for which no person would be held responsible. If the evidence satisfies you that the defendants used all the care that they should have done,—that is, used due care, ordinary care, in the selection of proper materials and the mode in which the scaffold was erected,—then that is all that could be required of them, and the charge of negligence would not then be made out against them, and in that case your investigations need go no further, and your verdict must be for the defendants. If, however, the evidence satisfies you that there was not ordinary care used in the erection of the scaffold, that due care was not used in the selection of proper materials, and that the scaffold, when completed, and the plaintiff and others went upon it, was not then in a reasonably safe condition to be used by the plaintiff and others for the purposes for 'which they went upon it,—for carrying the weight of these people who were to be upon it, and of the material which was going to be upon it, and was in fact placed upon it, carrying the weight that it did carry,—then that would justify you in finding that the scaffold was

insufficient, and that there was negligence in erecting it in this insufficient condition. This duty, gentlemen, of seeing that proper appliances are furnished, and proper places are provided in which to work, as, for instance, in this case, the erection of a proper scaffold, is one which the parties whose work is being done cannot evade. The master cannot evade the duty by delegating it to some subordinate; some agent who represents him. For in that case the subordinate, or the agent, or foreman, or whatever name may be given to him, stands in the shoes of and represents the master himself, and the negligence of the subordinate, of the representative or of the agent, is in the eyes of the law the negligence of the master himself. Primarily it is the duty of the master to use this ordinary care, and if he delegates it to another party he is still bound to see to it that the other person exercises the same amount of care. And if the person representing him fails in doing it, it is the same as though the master himself had failed directly in doing it. Then, gentlemen, if you find that the scaffold was insufficient, and that due care was not exercised in the putting of it up, and that from the use of improper materials, or for any other reason, it was not a sufficiently safe scaffold, so that thereby unnecessary risk and hazard was thrown upon those who were expected to go upon it for the purpose of performing the work that was expected of them, then the next question that comes up in the case is whether the plaintiff himself participated in the erection of that scaffold under such circumstances as that he would be held guilty of contributory negligence, or that he had such knowledge of the character of the scaffold, and of the manner in which it was built, as that he would be held chargeable with contributory negligence in using it or going upon it, under the circumstances that have appeared in the evidence before you.

Now, upon this question, as to whether the plaintiff himself aided in the erection of that scaffold, or controlled that matter, the parties are at issue before you, and it is for you to determine that question under the evidence in the case. On behalf of the plaintiff it is claimed that he did not have supervision of the matter; did not have any control over the mode of erection of this scaffold; and that while he was in and about the building, at the time of the erection of it,—and he himself testifies, I believe, that he went down by direction of the agent, Richardson, and got some pieces of material which might be used in the erection of the scaffold, and called the attention of Richardson to it, and so on, according to the testimony before you,—that he himself was not charged with the duty of erecting this scaffold, or of looking after it, and had really nothing to do with it. On behalf of the defendants, it is claimed, on the other hand, that the plaintiff did have practically the control; that he and the others who were working with him in erecting this scaffold selected out the pieces of timber that were put into it; that he had had experience as a plasterer before he went to state-prison, and, according to his own testimony upon the stand, he had been called upon frequently to build scaffolds, and knew generally about their character and the needs of the same; and that while the scaffold was, of course, erected for the defendants, and to be used in and about their business, nevertheless that the

plaintiff himself participated and aided in the building of the scaffold under such circumstances as that he must be held liable to have contributed to the insufficient character of it, so that he should be held to be guilty of contributory negligence. Now, as I have already said to you, gentlemen, a person who by his own negligence contributes to the accident by which he is injured cannot recover. His own negligence defeats his right of recovery, no matter how negligent the other party may have been. Now, what was the fact under the evidence in this case? It is for you to determine. If this plaintiff did not have anything to do with the erection of this scaffold, in the sense of having any direction over it; did not participate in the erection of it, so that he ought not to be held to have aided in the construction of it,—then, upon that particular ground, it could not be said that the charge of contributory negligence was made out against him. But, on the other hand, if you are satisfied, by a fair and reasonable preponderance of evidence, that in fact the plaintiff did aid in the erection of that scaffold, and in the selection of the material that was in it, so that he was one of the parties who built the scaffold in such a sense that he knew about it, and would be held, therefore, in that sense, directly responsible for the character of the scaffold itself, that would justify you in finding that he was guilty of contributory negligence, and that would defeat his right of recovery. Furthermore, gentlemen, even though the evidence may not satisfy you that the plaintiff built the scaffold, or so participated in the building of the same as to be held guilty of contributory negligence under the rule that I have just given you, nevertheless, if the evidence satisfies you that he knew of the character of it, knew of its nature, then there is another question for you to consider. As I have already said to you, there is always the duty placed upon the servant that he must exercise ordinary care for his own protection. If an employe comes to a scaffold that he would be required to go upon in the doing of his work, and if he knows that it is insufficient and risky, and that if he goes upon it he will subject himself to risks or hazards on that account, then, ordinarily, if he chooses to go ahead, with that knowledge, he is himself guilty of contributory negligence in that regard, because he has failed to exercise the degree of care that the law exacts of him. It will not do for a man to simply say: "Well, the master is responsible to me. I know this is an insufficient scaffold, and there is danger of its falling down, but I will take the risks. If I am hurt, 1 can hold the master." That will not do. The law says to him: "If you know that that is an insufficient scaffold, and that there is danger to life or limb in using it, you ought not to use it or go upon it. If you do, you take the risks."

Now, in determining what the facts are in this case, under the relation of the parties, as to the duty and obligation that the law imposes, you may take into consideration the circumstances that surrounded the plaintiff. As I have already said to you, there is no dispute but that the plaintiff was a convict. Of course he was not as free an agent in many respects, to say the least, as he would have been if he had not been a convict. Of course you understand that, and it is not necessary

for me to elaborate upon it. He was there under charge and under control. Now, being under such control, if the scaffold was an insufficient one, and he knew it, but he was compelled, nevertheless, to go upon it, notwithstanding that knowledge, by the pressure which could be and was put upon him in fact, if there was obedience required of him by any one there having a right to exact obedience, and he yielded to that and went upon the scaffold, then it would free him, you see, from the charge of contributory negligence, because he would not be a free agent. Because, if a man is compelled to go into a dangerous place, and does go, it would not be right to turn around and charge him with negligence in going, if he was not a free agent in that regard, and was forced to go. Is there anything, gentlemen, in the evidence in the case that satisfies you—while it is true that the plaintiff was a convict, and was there, therefore, under the control, of course, of the rules of the prison, and compelled to obey the orders of the warden, the deputy-warden, or the guards or persons who might be placed over him in that regard—is there anything in the evidence that satisfies you that that authority was in fact exercised upon him at the particular time, so as to require him to go upon that scaffold at that time? You have heard the evidence in the case which has been adduced upon that point, and it is for you to say what the facts are. If the evidence satisfies you that the plaintiff knew of the insufficient character of the scaffold, knew of the bad material that may have been placed in it, if such material was placed in it, knew, in other words, that the scaffold was unsafe and insufficient for the purpose for which it was erected, and he then went upon it, then, as I have said to you, that justifies you in finding that he would be guilty of contributory negligence. But the plaintiff has met that by saying that if he was required to go there by the exercise of authority upon him, why, then, he should not be held liable for contributory negligence, and I charge you that that is the law. You are to determine, however, whether the fact is that that authority was in fact exercised upon him, or whether any option was given him. Was he working there just as though he was a free man, and not a convict, with that scaffold there before him? Was he there generally to do that work, to look after that plastering, and therefore free to have gone upon that scaffold, if he had desired to, or to have objected to it, if he had desired to, or was he forced to go upon it simply by reason of the fact that here was this authority over him that compelled him to go, which he, under the circumstances, could not be expected to resist? These are the circumstances, gentlemen, that you must take into account, if you find that this scaffold was insufficient, and that the plaintiff knew it, in determining whether or not he shall be held guilty of contributory negligence in, nevertheless, going upon the scaffold under those circumstances.

I do not know, gentlemen, that there is any other light that I can give you, so far as the law is concerned, upon the pivotal facts in this case. You are the judges of the facts. You are to determine all questions of fact, including the ultimate question whether the verdict should be for the plaintiff or the defendants. Of course you understand that

in charging you, if the court refers to certain matters as being facts, I do that simply because I am compelled to do it to illustrate the principles of law that I have given you, and that I do not intimate to you any opinion upon the disputed questions of fact. It is for you to settle all the questions of fact in the case. If, under the instructions that I have given you, you find for the defendants, of course all you have to say is to so find by your verdict. But if you find upon the facts and the law, as I have given it to you, in favor of the plaintiff, then the further duty is placed upon you of determining the amount of damages that are to be awarded to the plaintiff. In cases of this kind, the rule is compensation. The plaintiff is entitled to be compensated, first, for the pain and suffering which he has suffered in the past, and which he may suffer in the future, as a result of the accident or injury that he received; and also for its effect upon his ability to earn money since he left the penitentiary up to this time, and whatever effect it may have upon him in this particular in the future. You will understand, gentlemen, that so far as any effect that the injury he may have received may have had upon his ability to labor during the term of his imprisonment, you cannot compensate him for that, because, as has been said to you by counsel, at that time he was not entitled to the wages that he might earn. They belonged to the state of Minnesota. Therefore it would be no pecuniary loss to the plaintiff that he was deprived of his ability to earn money during that time, because, if he had earned it, he would not have got it himself, and it is no loss to him pecuniarily to be deprived of it. But, for the pain and suffering that he may have been subjected to from the time of the accident up to this time, and which may be caused to him in the future, that he is entitled to be compensated for. Then he is entitled to be compensated fairly for the effect that this injury that he received may have had upon his ability to earn money from the time that he left the penitentiary up to the present time, and in the future. Now, in determining that, gentlemen, you will take into account the age of the party and his ability to earn money, what his ability was to earn money before he received the injury, and what his ability to earn money now is, in determining how much his ability to earn money has been affected by the injury which you may find was caused to him by this accident. As you can see, gentlemen, in a case of this kind, you have no evidence before you by which you can fix the exact amount of damages, or even approximate it. It is not like figuring up the damages that may be caused to a party by the destruction of his property, where its market value can be proved before you. It is a matter that has to be submitted to the sound common sense and good judgment of a jury. And you must take into account all the matters and contingencies that you know belong to human affairs. No one can tell how long a man will live. Human life is uncertain. No one can tell absolutely whether, if this man had not received this injury, he would have continued to be able to earn the wages that he has testified that he did earn before. There are uncertainties in all these matters. Now, you must take these all into consideration, giving due weight to them

all, and then you must fix upon such fair sum as in your judgment will fairly compensate the party for the pain and suffering that he has endured, and may endure in the future, and for the pecuniary loss occasioned to him by the effect of this accident upon his ability to earn money since the time that he left the penitentiary until the present time, and so far as it may effect his ability to earn money in the future.