CASE 32—ACTION BY JAMES P. YORK'S ADMR. AGAINST THE CITY OF OWENSBORO FOR CAUSING THE DEATH OF PLAINTIFF'S INTESTATE.—JAN. 13.

# City of Owensboro v. York's Admr.

APPEAL FROM DAVIESS CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. AFFIRMED.

NEGLIGENCE CAUSING DEATH—CONTRIBUTORY NEGLIGENCE OF CHILD.

Held: 1. Where a boy twelve years old, on a dare, touched a live electric wire, which was negligently left lying in a street, of the danger of which he had been warned, the question was for the jury whether he exercised such care and discretion as might be reasonably expected of a child of his age, situated as he was, though an adult, under the same circumstances, would be chargeable with contributory negligence as a matter of law.

GEORGE W. JOLLY, CITY ATTORNEY, FOR APPELLANT.

CLASSIFICATION OF QUESTIONS DISCUSSED.

1. The petition is defective in that it does not state facts showing the plaintiff's right and the defendant's duty. Maener v. Carrol, 46 Md., 212.

2. The motion made by the appellant to instruct the jury at the conclusion of the plaintiff's evidence, should have been sus-

tained, or, a similar motion made at the conclusion of all the evidence should have been sustained. Because the evidence showed the plaintiff's intestate to have been twelve years and four months old, active and intelligent, that he understood and appreciated the danger; that he was specifically warned not to touch the wire by which he was shocked and killed, because it was dangerous, immediately before he did so; that he said he could bet a board and stand on it and touch it and it would not hurt him; that after the board was brought and he got on it, and before he touched it, he was again told that if he did so, it would kill him; that he then laid hold of the wire with his hand and was killed. The evidence being all one way, not contradicted or modified by plaintiff, there was no question of fact to be submitted to the jury—only a question of law for the court. That assuming the defendant to have been negligent, such negligence was not the proximate cause of the plaintiff's injury, but the injury was due to plaintiff's own negligence and rash conduct. Wharton on Negligence, secs. 133, 134, 304; Shearman & Redfield on Negligence, secs. 31, 36, 37, 73a, 96; Thompson on Negligence, secs. 185, 186, 306, 307, 310, 311, 312, 313, 315, 318; Cain v. Petrie, 6 Hill, 522, 41 Am. Decs. 765; Lossee v. Clute, 51 N. Y., 494, 10 Am. Repts., 638; Lowrey v. Telegraph Co., 60 N. Y., 198, 10 A. R., 154; Cuff v. Railroad, 35 N. J. Law, 17, 10 A. R., 205; Carter v. Towne, 103 Mass., 507; Hofnagle v. Railroad Co., 55 N. Y., 608; Harris v. Cameron, 81 Wis., 239, 29 Am. St. Rep., 891; Chaddock v. Plummer, 88 Mich., 225, 26 A. S. R., 283; Sullivan v. Bridge Co., 9 Bush, 81; Scott v. Shepperd, 2 Blackstone, 892, 1 S. L. C., 466; Union Pac. Ry. Co. v. McDonald, 152 U. S., 262; Vanderburgh v. Traux, 4 Denio, 464, 47 A. D., 268; Colegrove v. N. H. R. R. Co., 20 N. Y., 492; Memphis R. R. Co. v. Jobe, 76 Miss., 452; McKeller v. Monitor, 78 Mich., 485; Central Pass. R. R. Co. v. Stevens, 14 Ky. Law Rep., 803; North Birmingham v. Calberwood, 89 Ala., 247; Ochsenbein v. Shapley, 85 N. Y., 214; Kentucky C. P. R. R. Co. v. Thomas, 79 Ky., 163; Paducah Railroad Co. v. Hoehl, 12 Bush, 46; Railroad Co. v. Gladman, 15 Wallace, 408; L. & P. Canal Co. v. Murphy, 9 Bush, 533; Pleasant v. Fant, 22 Wallace, 116; Wiley v. L. & N. R. R. Co., 83 Ky., 511; Murray v. Richmond R. R. Co., 93 N. C., 92; Lofdahl v. M. & St. P. Ry. Co., 88 Wis., 420; Atchison R. R. Co. v. Todd, 54 Kans., 551; Cleveland, &c. R. R. Co. v. Tartt, 64 Fed. Rep., 830; Pueblo Electric S. R. Co. v. Sherman, 25 Col., 114, 71 A. S. R., 116; Twist v. Winona R. R. Co., 39 Minn., 164; Merryman v. Chicago R. R. Co., 85 Iowa, 634; McLaughlin v. New Orleans, etc. R. R. Co., 48 La.

Ann., 26; Messenger v. Denny, 37 Mass., 197, 50 A. R., 295; Payne v. Chicago R. R. Co., 129 Mo., 405; Nagle v. Alleghany R. R. Co., 88 Penn. St., 35, 32 A. R., 413; Tucker v. N. Y. R. R. Co., 124 N. Y., 308, 21 A. S. R., 670.

And on pages sixty and sixty-one will be found additional cases holding children guilty of contributory negligence and denying recovery.

On page sixty-two is a list of additional cases holding children responsible for contributory negligence where there was warning of the danger, or there was knowledge of it, and denying recovery.

3. If, however, the motions for peremptory instructions were not improperly overruled, then, it is contended, the court erred in not instructing the jury as requested by appellant, that if they believed from the evidence plaintiff's intestate was warned of the danger immediately before touching the wire and receiving the injury, and that in disregard of such warnings he did so, they should find for the defendant. (See pp. 10 and 64.) Shearman & Redfield, sec. 73a; Nagle v. Alleghany, etc., R. R. Co., 88 Penn. St., 35; Deitrich v. Baltimore R. R. Co., 58 Md., 337; Tucker v. N. Y., etc R. R. Co., 124 N. Y., 308, 21 Am. St. Rep., 670; Paducah, etc. R. R. Co. v. Hoehl, 12 Bush, 41.

WILFORD CARRICO AND BERKHEAD & CLEMENTS, FOR APPELLEE.

STATEMENT OF QUESTIONS PRESENTED AND AUTHORITIES CITED IN THIS BRIEF.

1. Appellant owned and was operating an electric light plant. Its plant was imperfectly constructed and its wires without insulation, or defectively insulated.

2. Appellant was grossly negligent, both in the construction and operation of its plant.

3. Appellee's intestate, a boy twelve years old, being upon the street, came in contact with an uninsulated wire and was killed. Verdict and judgment for $5,000 damages.

4. Appellee's right and sufficiency for petition. Haynes v. Raleigh Gas Light Co., 41 Am. S. R., 790; Lexington R. R. Co. v. Fain's Admr., 24 Ky. Law Rep., 1443.

5. Appellant's duty. Keasby on Electric Wires, secs. 231, 239; Joyce on Electricity, sec. 445; Ency. of Law, vol. 10, 2d ed., p. 672; Haynes v. Raleigh Gas Light Co., 41 Am. S. R., 786; McLaughlin v. Louisville Electric Light Co., 18 Ky. Law Rep., 693; Overall v. Louisville Electric Light Co., 20 Ky. Law Rep., 759;

Sweitzer v. Citizens' Genl. Electric Co., 21 Ky. Law Rep., 608; Macon v. Paducah R. R. Co., 23 L. R., 46.

6. Was appellant doing its duty at the time intestate was killed? Thompson on Electricity, vol. 1, sec. 798; Perham v. Portland Electric Co., 40 L. R. A., p. 810; Overall v. Louisville Electric Light Co., 20 Ky. Law Rep., 761; Suburban Electric Co. v. Nugent, 31 L. R. A., 700.

7. Contributory negligence. Sweitzer v. Citizen's Electric Light Co., 21 L. R., 608; Am. & Eng. Ency of Law, vol. 10, p. 874; Beach on Contributory Negligence, sec. 21 B; Texarkana Gas Co. v. Orr, 43 Am. S. R., 30-34; Macon v. Paducah R. R. Co., 23 Ky. Law Rep., 46.

OPINION OF THE COURT BY JUDGE HOBSON—AFFIRMING.

Appellee filed this suit as the administratrix of the estate of James P. York, to recover of appellant for his death. The intestate was a boy twelve years old.    Some boys playing in the street discovered that a wire connecting with the electric light system was hot.    When the curfew rang, the larger boys went home.    The intestate was sitting on a fence post.    One of the boys dared any one in the crowd to touch the wire, and said he would give a nickel if some one would touch it.    The intestate said that if he could get a board and stand on it he could touch it, and it would not hurt him.    Some one got a board, and the little boy got on it. As soon as he touched the wire he was immediately killed.    One of the boys who pulled him off from the wire by catching hold of his person was severely shocked.    One of the older boys, who was fourteen years of age, before he left, told the boys not to touch the wire, or they would get killed.    But it is uncertain from his testimony whether the intestate heard this.    About this time, also, one of the boys got a piece of wood, and touched the wire with the wood, and it shocked him.    It is earnestly insisted for the city that there can be no recovery, although it was negligent in having the hot wire in the

street, for the reason that the intestate knew the danger, and voluntarily took the risk, assuming that, if he stood on the board, the electrical current would not hurt him.   This would be true of an adult, but the question is whether the same rule should be applied to an infant twelve years old.

If the child had been three years old, it would not be maintained that his negligence or willfulness in touching the wire would acquit the city of responsibility for having such an instrument of death negligently in the street; and when the child is older it is a question for the jury whether, considering his age, he exercised such care and discretion as might be reasonably expected of a child situated as he was.    In Macon v. The Paducah Street Railway Company 110 Ky., 680 (23 R., 46) 62 S. W., 496, a boy twelve years old was killed by a live wire in the streets, and there was evidence in that case, as here, that the child was warned of the danger, but, after showing that there was evidence of negligence on the part of the defendant sufficient to take the case to the jury, the court in disposing of the defense of contributory negligence, said: "It was also the province of the jury to determine whether or not plaintiff had in fact been warned of the danger of taking hold of the wire, and, if so, whether, considering his age and capacity, and all the other circumstances as shown by the evidence at the time that he did take hold of it, he was guilty of such contributory negligence as barred his right to recover in this action."    In Texarkana Gas Company v. Orr (Ark.) 27 S. W., 66, 43 Am. St. Rep., 30, the wire was lying in the street, and a hog had been shocked by it.    A boy who was passing along the street, took hold of one of the wires lying in the street, which was not charged, and began dragging it across the street.    A policeman saw him, and called to him to put

it down.   He  then took the wire in both hands, and began throwing it backwards and forwards, with a view to throwing it down. When he did this, the wire was thrown in contact with a live wire, while he yet held it in his hands, and he was killed.    His exact age is not stated in the report, except that it appeared that he was "of that indiscreet age which is between the irresponsibility of youth and the full responsibility of manhood."    It was held that it should be left to the jury to say how far he should be held responsible.    These decisions are in accord with the current of authority.    In Washington, etc., R. R. Co. v. Gladmon, 15 Wall., 401, a child seven years old was injured.    The court said: "Of a child three years of age less caution would be required than one of seven, and of a child of seven less than one of twelve or fifteen.    The caution required is according to the maturity and capacity of the child, and this is to be determined in each case by the circumstances of that case."    In P. & M. Railroad v. Hoehle, 75 Ky., 41, a child twelve years old was struck by a train.    It was held that she could not recover if she would have escaped injury "by exercising the caution and prudence that one of her age would ordinarily have used under the circumstances."

In Kentucky Central Railroad v. Gastineau's Adm'r, 83 Ky., 119, a boy between fourteen and fifteen years old was run over and killed by a car.   It was held that the jury should have been instructed to find "whether, from the age of the deceased, he had discretion enough to know his danger, and guard against it, or not."  In 1 Shearman & Redfield on Negligence, section 73, it is said:  "It is now settled by the overwhelming weight of authority that a child is held, so far as he is personally concerned, only to the exercise of such degree of care and discretion as is reasonably to be expected from children of his age.    No

injustice is done to the defendant by this limitation of the defense of contributory negligence, since the rule itself is not established primarily for his benefit, and he can never be made liable if he has not been himself in fault."

In 7 Am. & Eng. Ency. of Law, p. 408, after a discussion of the rule requiring that allowance must be made for childish instincts, impulses, and want of discretion, it is said: "As the standard of care thus varies with the age, capacity, and experience of the child, it is usually, if not always, where the child is not wholly irresponsible, a question of fact for the jury whether the child exercised the ordinary care and prudence of a child similarly situated; and, if such care was exercised, a recovery can be had for an injury negligently inflicted, no matter how far the care used by the child falls short of the standard which the law erects for determining what is ordinary care in a person of full age and capacity." Electricity is such a deadly instrumentality, as used by an electric light company, and the wire when charged with it has so little appearance of danger, that a child of twelve years would not appreciate the peril of touching the wire. The fact that the child was warned of the danger, or told not to touch the wire, while it is a circumstance to be considered by the jury, is not conclusive on the question of negligence; for it is the want of discretion of the child, rather than the want of information, which underlies the rule exempting him from the consequences of his act, as shown by the authorities above referred to. Children act upon childish instincts and impulses. That discretion which is expected of an adult can not be required of them. It is incumbent on those handling dangerous instrumentalities not to leave exposed to the reach of children anything which would be tempt-

ing to them, and which they, in their immature judgment, might naturally suppose they could handle or play with.

In the case at bar, the little boy, from his want of discretion and judgment, thought he could handle the deadly wire if he stood on a board. His ignorance as to the danger of taking hold of the wire while standing on the board, his childish impulse to take hold of it, not to take a dare, and his childish want of discretion were the causes that led to his death. Under such circumstances it was a question for the jury to determine under all the facts whether he exercised such care and discretion as might be reasonably expected of one of his age situated as he was. The petition was sufficient under the rule in this State as to the necessary allegations in an action to recover for death by negligence. L. & N. R. R. v. Wolfe, 80 Ky., 82; 3 R., 576; Chiles v. Drake, 2 Metc., 149, 74 Am. Dec., 406.

Judgment affirmed.

Judges Paynter and Settle dissent.

Dissenting opinion by Judge Barker:

(January 15, 1904.)

Finding myself unable to concur in the conclusions reached by the majority of the court in this case. I respectfully submit the following reasons therefor:

I have no fault to find with the rule at law that an infant is to be held to no higher standard of responsibility for his acts than is commensurate with his age and experience. There is little or no difference between my brethren of the majority and myself as to the facts in this case.

The divergence of our views begins with the application of those facts, or, rather, the conclusions of law to be deduced therefrom. The infant decedent, James P. York, was one of a number of boys who were playing at the corner of Cherry and Elm streets, in Owensboro, Ky., on the

night of his death. It had been discovered by the boys that the wire rope which was used to lower and elevate the electric lamp at the corner in question had become charged with electricity, or, to use the language of the boys themselves, "it was hot." This rope was not dangling in the street, or over the sidewalk, where one might come in contact with it by inadvertence or accident, but was securely locked on the electric light pole, about four feet from the pavement. Just prior to the accident, a man, passing along, had warned the boys not to touch the rope, and that, if they did, it would kill them. It is not clear that the decedent was there at the time this warning was given; but it is certain that he arrived on the ground within a few minutes thereafter, and heard the boys discussing in boyish fashion the danger of touching the rope, and playfully daring each other to do so—one boy saying that he would give a nickel to any of the other boys who would touch the rope. At this time the decedent was sitting on a fence along the property line next to the street, in easy conversational distance of the boys on the pavement, discussing the danger of touching the wire; and while this discussion was going on he jumped down to the pavement, and said that he was not afraid to touch it, provided he could get a plank to stand upon. There was a house being built in the immediate neighborhood, and from the debris around it a plank was obtained, either by the decedent or one of the boys for him. This plank being placed on the pavement, the decedent stepped upon it, grasped the charged wire, and was instantly killed. Just before he stepped on the plank, one of the boys said to him: "Don't touch it, Jimmy; it will kill you." Another one said: "Oh, he's got rubber in his shoes."

Admitting the negligence of the municipality in permit-

ing the wire rope to become charged with electricity, it seems to me clear that the decedent was guilty of such contributory negligence as entitled the appellant munici- pality to a peremptory instruction.    When all of the facts are admitted, the question of contributory negligence be- comes a rule of law to be applied by the court.    That the decedent knew the wire was charged with electricity ap- pears from the uncontradicted testimony; that he was es- pecially warned, if he touched it, he would be killed; that he fully appreciated the danger—is clearly demonstrated by the fact that he would not touch it without attempting to insulate himself from the effect of the current by plac- ing a plank on the pavement, upon which he proposed to stand while performing the act which caused his death.

Jimmy York knew that the rope was charged with elec- tricity, and he knew that, unless he insulated himself a- gainst the current with which it was charged, if he touched it, he would lose his life.    There was no contrariety of evidence on this point.    The mistake the decedent made was in the defectiveness of the insulation which he select- ed.    It is a well known fact that a dry plank, free from nails, affords at least fair insulation from electricity, when placed under the feet of one proposing to come in contact with it.    It is also known that a damp plank, or one con- taining nails driven through it, will not afford such im- munity from danger.    The plank selected in this case for some reason was not a nonconductor of electricity.    Hence the death of Jimmy York.

I do not know how appellant could bring home to the decedent the knowledge of the danger of touching the wire more completely than was done in this case, where all of the evidence—both that for appellant and that for appel- lee—shows that he was told of the fact that the wire was

charged with electricity, and solemnly warned that, if he touched it, he would be killed; nor do I know how his appreciation of that danger could be brought home to him more completely than by showing, as was done in this case by the uncontradicted evidence, that before he would touch the rope he undertook to insulate himself against the effect of the current. His act was one of deliberation— not of inadvertence or accident. . It was done with a due appreciation on his part of the danger involved in the act. Now, what is the difference between the responsibility of an adult and a boy twelve years old in a case like this? As to the former, as is well stated in the opinion of the majority of the court, his guilt of contributory negligence, from the admitted facts, would be conclusive. The only difference in the case of the latter arises from the uncertainty as to whether or not he had sufficient understanding to appreciate the known danger. When this fact is clearly established against an infant, there is no difference in the rule of law with regard to responsibility between him and an adult; and, in this case the decedent demonstrated beyond doubt that he did both know and appreciate the danger of touching the charged rope in question.

It may be instructive to refer to some of the evidence of the little boys on the subject of the decedent's knowledge of the danger of touching the wire. John Garrett, one of the boys present at the time of the accident, was asked this question: "Q. Did you hear any conversation, about the time just before Jimmy York touched the wire, about the wire in any way, and while Jimmy was there? A. They all knew the wire would shock them if they touched it." Claude Jarboe was asked: "Q. Did you boys know it was dangerous? A. Yes, sir." The uncontradicted testimony of the witnesses present at the time

of the accident, and his own action in taking measures to insulate himself from the known danger, conclusively show that Jimmy York knew of the presence of the electricity in the wire, and knew the danger that would accrue to him if he touched it without being properly insulated. That he made a miscalculation as to the serviceableness of the method of insulation adopted was no fault of appellant. He could not legally coquette with death at its expense.

In all of the cases cited in the opinion, holding that the question of the responsibility of youth is a fact for the determination of the jury, the question as to whether or not the youth knew of the existence of the danger, or appreciated it, if known, was in dispute, and, of necessity, this was an issue for the decision of the jury; but where the facts, as in this case, without contradiction show both the knowledge and its appreciation by the youth, then the appellant was entitled to the rule of law arising from the admitted facts, and therefore to a peremptory instruction, unless it be determined that no amount of uncontradicted testimony is sufficient to convict an infant of contributory negligence.

Much is said, in the opinion, on the subject of the subtle danger attending the use of electricity. This is true. An electric current is not only dangerous, but, being invisible, noiseless, and odorless, it is often impossible to detect its presence until its deadly work is done; and for this reason a higher measure of responsiblity rests upon those who use it as a means of commerce than arises from the use of any other known power. But, when actual knowledge of the existence of this danger and a due appreciation thereof is established by all the evidence, the difference between it and any other danger vanishes.

It seems to me that this case records the high-water mark thus far reached by that ever-flooding tide of speculative ligitation which threatens to overwhelm the courts of the country—litigation wherein sufferers from the consequences of their own wanton and reckless negligence seek remuneration from those upon whose property they have trespassed, and which enables juries to constitute themselves vicarious almoners for the distribution of charity among petitioners whose misfortunes excite their sympathy.