CASE 80.—ACTION BY WILLIAM DAVIS' ADMINISTRATOR AGAINST THE CAPITAL GAS & ELECTRIC LIGHT COMPANY.—June 8, 1910.

## Capital Gas & Electric Light Co. v. Davis' Admr.

Appeal from Franklin Circuit Court.

R. L. Stout, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Reversed.

1. Trial—Question of Law and Fact.—Where the contributory negligence of deceased was established by the undisputed facts presented by the evidence, the court should, as a matter of law, have so decided, and peremptorily instructed the jury to find for defendant.

2. Electricity—Injuries Incident to Production—Care Required in General—Contributory Negligence.—While handlers of electricity are practically insurers against danger to persons who may come in contact with their wires, one who voluntarily puts himself in contact with a live wire, knowing it to be charged, is guilty of negligence; and this is true of any adult though he be wholly unskilled in the handling of electricity.

3. Electricity—Injuries Incident to Production—Personal In-
juries—Contributory Negligence.—Decedent, an expert elec-
trician, who, with knowledge that a broken wire was heavi-
ly charged with electricity, and was in a dangerous condi-
tion, attempted to handle it using only his cap as an insu-
lator, was guilty of contributory negligence, precluding a re-
covery for his death.

4. Convicts—Personal Injuries—Contributory Negligence.—That
decedent, killed through contact with an electric wire, was,
at the time, a convict in the state penitentiary, did not take
the case out of the ordinary rule as to contributory negli-
gence; decedent, though called on to attend to the wire be-
cause he was electrician of the prison, acting under no
coercion, and being left free to pursue his own course.

T. L. EDELEN and B. G. WILLIAMS for appellant.

SCOTT & HAMILTON, W. C. MARSHALL and R. B. FRANK-
LIN for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Revers-
ing.

The appellee's intestate, William Davis, a convict
confined in the state penitentiary at Frankfort, lost
his life January 13, 1906, from contact with a wire
charged with electricity belonging to the Postal Tele-
graph & Cable Company, which had burned out where
it entered a call box at the penitentiary, and by rea-
son thereof fallen to the ground within the walls of
that institution. The Postal Telegraph & Cable
Company and the appellant, Capital Gas & Electric
Company, have on Main street in the city of Frank-
fort each a wire attached to the same pole located
near the Frankfort Hotel. The wire of the Postal
Telegraph & Cable Company had been allowed to be-
come loose and so remain until it swung in contact
with the wire of the Capital Gas & Electric Light
Company which so overcharged with electricity the
wire of the Postal Telegraph & Cable Company lead-

630 KENTUCKY REPORTS. [Vol. 138.

Capital Gas & Electric Light Co. v. Davis. Adm'r.

ing into the penitentiary as to cause it to burn out where it connected with the call box of that institution. The severed wire which fell to the ground, being heavily charged with electricity, sputtered and flashed to such an extent as to make it very dangerous to persons passing, and its condition at once known to the penitentiary guards and others present. At this juncture one of the guards called appellee's intestate, who was an electrical expert and then in charge of the penitentiary electric plant, to ascertain the cause of the dangerous condition of the fallen wire and to remedy it. The latter temporarily relieved the situation by removing the wire from the ground, and placing it upon a truck out of the way of persons passing. This he did by using his woolen cap as a means of protection, holding it in his hand while he took hold of the live wire and placed it upon the trestle. But in doing so he was violently shocked, and his cap burned by the contact. Others present when this was done testified that the electric current in the wire was so strong that they felt its effect without contact. As the day was a wet and cloudy one, the electric lights of the penitentiary had been turned on and were then in use. After placing the wire upon the truck, the intestate, who believed it had been charged by contact somewhere with a wire of the penitentiary electric works, left it to turn off the current from the prison lights of which he was in charge. Whether he performed this supposed duty does not appear, but, if he did so, it is evident it did not relieve the wire in question of the electric current, and further evident that he soon returned to the wire, for in a few minutes after he left it to turn off the penitentiary current his dead body was found at the foot of the truck with the live wire grasped in

his hand, and lying near him on the ground was the woolen cap, which, like his hand, was in a badly burned condition from contact with the wire.

Shortly after the death of Davis, this action was brought by the administrator of his estate to recover of appellant damages therefor; it being, in substance, alleged in the petition that it was caused by the negligence of appellant in suffering its wire to be and remain in contact with that of the Postal Telegraph & Cable Company at the pole on Main street in their joint use, by which the wire of the latter connecting with the call box in the penitentiary was so overcharged with electricity from appellant's wire as to cause it to burn out at the call box and fall to the ground within the walls of the penitentiary, thereby creating the danger in the attempt to remove which the intestate lost his life. The answer of appellant specifically denied the act of negligence charged in the petition, and pleaded  contributory negligence on the part of the intestate, but for which, it was alleged, he would not have lost his life. Appellee by reply denied the contributory negligence alleged in the answer, and the trial resulted in a verdict in favor of appellee for $6,000. Reversal of the judgment entered upon the verdict is asked upon various grounds, but appellant's main contention is that the intestate's death was caused by his own negligence, and that, this fact being established by the evidence, the trial court erred in refusing the peremptory instruction asked by it. This contention we must sustain because it is supported by the record; in other words, the contributory negligence of the intestate was established by the undisputed facts presented by the evidence. Therefore the court should, as a matter of law, have so decided and  peremptorily instructed the jury to find for appellant.

We admit the contention of appellee's able coun-
sel that the weight of authority is to the effect that
handlers of the mysterious and deadly agency known
as electricity are practically insurers against danger
to persons who may come in contact with their wires,
but, while this is true, it is also a  well-recognized
rule that one who voluntarily puts himself in contact
with a live wire knowing it to be charged with the
deadly current must be held to be guilty of negli-.
gence.  And this would be true of any adult, though
he were wholly unskilled in the handling of electricity.
In the case of the City of Owensboro  v.  York's
Adm'r, 117 Ky. 294, 77 S. W. 1130, 25 Ky. Law Rep.
1397, this court, in considering whether  the  rule
should be applied to a boy 12 years of age who was
killed by grasping with his hand a loose, live wire,
after being informed of the danger and warned not
to do so, said:  ''It is earnestly insisted for the city
that there can be no recovery although it was neg--
ligent in having the hot wire in the street, for the
reason that the intestate knew the danger and vol-
untarily took the risk, assuming that, if he stood on
the board, the electrical current would not hurt him.
This would be true of an adult, but the question is
whether the same rule should be applied to an infant
12 years old.''  The court held, however, that the
question whether the infant was guilty of contribu-
tory negligence was in view of his youth and inex-
perience one to be determined by the jury from the
evidence in the case.  Again in a later case—Lewis'
Adm'r v. Bowling Green Gaslight Co., 117 S. W. 278,
22 L. R. A. (N. S.) 1169—in which a recovery was
sought for the death of the appellant's intestate, a
farmer, caused by contact with a live wire on a turn-
pike which he took in his hand, the court said:  ''If

decedent knew that it was a live wire, and knew the danger of touching it as he did, the act would be undoubtedly negligence on his part which would defeat a recovery." ,An examination of the following list of cases decided by courts in other jurisdictions will demonstrate that they are in accord with what this court has held to be the law in the cases, supra: Frauenthal v. Laclede Gaslight Co., 67 Mo. App. 1; Tri-City Ry. Co. v. Killeen, 92 Ill. App. 57; Junior v. Missouri Co., 127 Mo. 79, 29 S. W. 988; Columbus R. R. v. Dorsey, 119 Ga. 363, 46 S. E. 635.

As previously stated, appellee's intestate was an expert electrician, and, by reason thereof, had been placed in charge of the penitentiary electric light plant. According to the evidence, when the live wire of the Postal Telegraph & Cable Company was discovered by the penitentiary guards, it was lying on the ground below the call box from which it had been severed, and was so charged with electricity that it emitted sparks with a hissing or sputtering sound. Even such novices as the guards saw and realized the danger of getting in contact with the wire, and hence one of them called or sent for the intestate to come and ascertain the cause of the dangerous condition of the wire, and to remedy it. Upon getting to the wire, the intestate, without suggestion of any one and notwithstanding a warning from one of the guards that there was danger in handling it, took hold of the wire with his hand, using his woolen cap as an insulator, and laid it upon a truck where it was above the heads and temporarily out of the reach of passersby. Having accomplished this result, the intestate left the wire with the avowed purpose of stopping the penitentiary dynamo, believing that the Postal Telegraph & Cable Company's wire

had in some way been crossed by a wire of the peni-
tentiary light plant.   He must almost immediately
have returned to the wire upon the truck.   No one saw
him return, however, nor was he seen after his re-
turn alive, but in a very short time, only a few min-
utes after he left to turn off the dynamo, his dead
body was found lying upon the ground near the truck,
with the live wire in his hand, and near him was the
cap badly burned.

According to the evidence, when the intestate first
approached the wire, it was emitting sparks and mak-
ing a sputtering or sparkling noise.   When he laid
it upon the truck it gave him a violent shock.   When
he left it to turn off  the dynamo, it was  emitting
sparks and making a noise, and, when his dead body
was discovered on the ground, the wire, though held
in one of his hands, was still emitting sparks and
making the same noise.   This proof leaves no doubt
of the intestate's knowledge of the dangerous con-
dition of the wire.   Being an electrical expert, he
must have known better than the guard who warned
him the risk he undertook in attempting to handle
the wire with such an appliance as a woolen cap.   If
he did not realize the danger of handling the wire
before laying it upon the truck, in performing that
act he certainly did so, for he was then, as he ad-
mitted, violently shocked and the cap scorched; in-
deed, others standing near, one of them as far away
as 15 feet, felt the force of the current with which
the  wire was  charged.   If  the wire was  emitting
sparks of electricity when the intestate reached and
laid it upon the truck, when he left it to stop the pris-
on dynamo. and when his dead body was discovered,
it cannot be doubted that it was also emitting sparks
when he returned to it from the dynamo, or that he

then attempted, as in the first instance, to take hold
of the wire cap in hand, but in doing so met with a
stronger current of electricity than at the first hand-
ling of it, or accidentally permitted his naked hand to
get in contact with the wire and thereby lost his life.
The undisputed facts show that the danger of hand-
ling the wire in question was so obvious that the in-
testate could not have failed to know and realize it;
besides, it is not denied that he was warned of the
danger to be incurred in handling it.   This being
true, he assumed the risk incident to this obviously
dangerous condition, and in attempting to handle the
wire in the manner adopted he was guilty of negli-
gence, and, while it may safely be conceded that ap-
pellant was negligent in suffering its wire to be and
remain in contact with that of the Postal Telegraph
& Cable Company, it is equally evident that, notwith-
standing such negligence, the intestate's negligence
so contributed to his death that but for same it would
not have occurred.

We are unable to see that the fact that the intestate
was a convict took his case out of the ordinary rule
as to contributory negligence.  While it may be true
that as a convict he was more subservient to those in
authority over him than is a servant to the master
who employs him, yet, if in point of fact he was not
compelled by the prison guards to handle the wire in
question, as he did, but was left free to adopt such
means of doing the work as his own judgment ap-
proved, the question of whether he was or not guilty
of contributory negligence must be determined by the
rules of law that would apply to an ordinary servant
or laborer in the same state of case. This principle we
understand to be recognized in the case of Dalheim
v. Lemon (C. C.) 45 Fed. 225, cited for appellee.  In

the case at bar the intestate in undertaking the work of handling the live wire acted under no coercion. He was called on, it is true, to attend to the wire because he was the electrician of the penitentiary and an expert in that occupation, but not even a suggestion was made by any of the prison authorities as to the manner of doing the work. On the contrary, his judgment was deferred to by them because of his superior skill and their ignorance, and he was left free to pursue his own course, which he did, although warned of the danger attending his manner of handling the wire. There is therefore no ground for the contention that he acted under coercion. In our view of the case, the trial court erred in refusing the peremptory instruction asked by appellant.

The reasons we have given for this conclusion render discussion of other grounds relied on for a reversal unnecessary. We will say, however, that the same grounds were urged as matters of defense in the court below, but in our opinion that court properly rejected them.

For the reasons indicated, the judgment is reversed and cause remanded for a new trial consistent with the opinion.