## Kentucky Utilities Company v. Black's Administratrix.

(Decided June 21, 1932.)

GORDON, LAURENT & OGDEN; N. R. PATTERSON; and D. B. SMITH for appellant.

FORESTER & CARTER; J. B. SNYDER; and H. H. FUSON for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

The appeal is from a $10,000 judgment in favor of the administratrix of C. C. Black under a claim that his death was caused by negligence of the appellant. A reversal is sought on the grounds that the defendant was not proven negligent, the plaintiff was contributory negligent, and the instructions contained prejudicial errors.

In the early evening of September 16, 1930, the radio of the deceased at his home in Harlan was not operating properly, and, when turned off, smoke issued from it. Black disconnected some wires of the radio and then went into his yard. There was a flash of light and a sharp sound. In a moment Black was found on his back with the end of a broken wire near by flashing fire where it came in contact with the wet ground. He soon died without regaining consciousness. It is apparent that he had taken hold of the wire which led from the radio aerial into the house, and that it was heavily charged with electricity.

Black had suspended an antenna across the street from a pole on the front of his house to a neighbor's res-

idence. It was found that that wire was in contact with a wire of the defendant company carrying 2,300 volts of electricity which it crossed in the street. The aerial had been there about four years. About two years after it was put up the electric wire was strung three or four feet beneath the aerial. But on July 30, preceding the accident, the company took up the slack and raised its wire because of contact with trees until it was about twelve inches below the aerial. About a week afterwards Black restrung his antenna and put it 3 feet or more beneath the electric wire. That wire extended 246.4 feet from a 35-foot pole 81 feet west of Black's house to a terminal pole which was 25.7 feet high, but the surface of the ground was lower than at the other pole. It was about 27 feet from the ground where the wires touched. The evidence shows that, during the period of about six weeks between the change in the aerial and the accident, this electric wire was gradually sagging and coming nearer to the aerial. At the point of contact the insulation on the electric wire was broken.

It is conceded to be the duty of those transmitting electric current to exercise the highest degree of care to discover and to avoid dangerous conditions in and about its system. But that duty, it is said, is owed only to persons who are injured where they had a right to be and where their presence may have been reasonably expected; and it is claimed in the instant case the defendant owed no duty to the decedent to discover his aerial wire in proximity to the electric wire because he had placed it in the street without lawful authority.

The evidence of the plaintiff is that this span of wire—more than 246 feet long—was of unusual and excessive length, and not customary in the construction of electric lines in Harlan; that 150 to 175 feet is regarded as the proper distance between poles; and a longer span is dangerous because of the tendency to sag. The poles were found to be straight, although not guyed. There is no evidence that the wire was placed too low as a matter of construction. But, when the company raised its wire, it had put it dangerously close to the aerial. Its foreman, who had helped to string the wire originally, and who was present and in charge of the lineman who raised it, stated that on neither occasion did he see the aerial, and that he had no knowledge of its presence. It was his duty to have seen it, and he is charged with having seen it. Black took cognizance of the situation, and did what

he could to remedy it by placing his wire three feet or more below that of the defendant. The condition existed for five or six weeks, with the electric wire gradually sagging until it had dropped 8 feet below the point of fastening on the pole nearest the house. The wire was again contacting the trees and burning them during storms, but the company's foreman said he had made no inspection and did not know it. The company cannot be heard to say it did not discover the sagging wire and the dangerous condition. The care required of the company demanded that it should have discovered it and remedied the situation. Curtis' Law of Electricity, sec. 480; Ann. Cas. 1918C, 919, note; Smith's Admx. v. Middlesboro Electric Company, 164 Ky. 46, 174 S. W. 773, Ann Cas. 1917A, 1164; Macon v. Paducah St. Ry. Co., 110 Ky. 680, 62 S. W. 496, 23 Ky. Law Rep. 46. At least, it was a question for the jury whether it could have done so under the facts, and that was submitted in an appropriate instruction.

But the principal argument for a peremptory instruction is that no duty was owing the deceased to discover the peril because he had no right to have his wire over the street. It is sought to bring the case within that line of cases where a person is injured or killed by coming in contact with electric wires directly or indirectly at such places and under such circumstances that his presence there could not have been reasonably anticipated. The rule is thus aptly expressed in Louisville Gas & Electric Company v. Beaucond, 188 Ky. 725, 224 S. W. 179, 182:

"The care required of one who is engaged in distributing electricity, as an electric light company has oftentimes and without variation in this jurisdiction been declared to be that he must exercise the highest degree of care and skill known which may be exercised under the same or similar circumstances to prevent injury to persons who may be at places where they have a right to be for either business or pleasure, or who may be engaged in doing things which they have a right to do."

Typical cases where it was held no duty was owing the person who was killed through contact with electric wires and upon which the appellant relies are: Mayfield Water & Light Company v. Webb's Admr., 129 Ky. 395, 111 S. W. 712, 33 Ky. Law Rep. 909, 18 L. R. A. (N. S.)

179, 130 Am. St. Rep. 469; Rodgers' Admr. v. Union Light, Heat & Power Company (Ky.), 123 S. W. 293; City of Henderson v. Ashby, 179 Ky. 507, 200 S. W. 931, 14 A. L. R. 1018. The Pennsylvania case of Everett v. Citizens' Gas & Electric Company, 228 Pa. 241, 77 A. 460, is cited as being controlling. There the defendant's guy wire had become charged with electricity through the breaking of a cross-arm. The poles, the wire carrying the current, and the guy wire were in an alley. Some one, but not an employee of the defendant, had fastened a wire clothes line to the electric light pole and wrapped it around the guy wire. While hanging out clothes, the plaintiff's wife was electrocuted. A nonsuit was declared upon the ground that the only danger in the situation was created by the deceased or someone acting for her in making an unauthorized and manifestly unsafe use of the pole and guy wire. That case, it seems to us, like the Rodgers case, supra, is clearly distinguishable, for there is no claim that Black or any one for him attached his wire to the property of the defendant company. The fatal shock was not caused by the placing of the aerial but by the act of the defendant in allowing its electricity to escape into that wire.

Nor is this case of constructive knowledge of danger arising from a duty to anticipate the presence of any one having a right to be at the place where the injury occurred. It is a matter of constructive knowledge (since no actual knowledge was proven) through a duty to know what was actually being done by the person injured; i. e., having his radio aerial under the defendant's wire. The apparent probability of danger and failure to remedy it determines the liability rather than the right of the deceased to be in the street with his aerial. It is a sound and wholesome rule that, where an electric power company acquiesces in the dangerous proximity of wires of another to its own, it must keep its wires in such condition as to insure safety to those exposed to immediate contact therewith. Curtis' Law of Electricity, secs. 480, 497, 519, 520; Dwight Mfg. Company v. Word, 200 Ala. 221, 75 So. 979.

We find two cases where death ensued from contact of radio aerials with live wires. While in neither case was the radio or the electric wire in the street, the difference becomes immaterial in view of our conclusion respecting the right of location.

In Kessler v. West Missouri Power Company, 221 Mo. App. 644, 283 S. W. 705, a company transmitting electric current was held liable for a death caused by permitting one of its wires to remain too close to a radio aerial. While trying to put out a grass fire on his premises the deceased came in contact with his fence which had become charged with electricity through an improperly grounded radio wire which was electrified by a high voltage wire over his yard that sagged onto the radio wire by reason of an accumulation of snow and ice. The court said that, if the defendant had maintained an inspection of its wires (close to which the radio wire had been placed), it was certainly negligently done under the circumstances. It was considered that the placing of the radio wire upon one's premises within thirteen inches of a high voltage wire, apparently properly insulated, without notifying the company and asking it to remove its wire to a safe position, would not necessarily amount to contributory negligence.

In Texas Power & Light Company v. Culwell (Tex. Com. App.), 34 S. W. (2d) 820, 821, the facts were quite similar to those before us. A man went out the back door of his business house and in a few minutes his groans attracted attention, and he was found dead or in a dying condition with a radio wire grasped in his hand. It was disclosed that the aerial which had been attached to the adjacent building had become severed (probably by a recent storm) and was resting on an electric wire at a place where the insulation had been worn off. The court said: "It can not be properly held as a matter of law that plaintiff in error could not reasonably anticipate that the radio wire, which it knew to be strung above its electric wire, might, from one cause or another, break and fall across its wire and become heavily charged with a current of electricity, if it happened to rest on that portion of its wire not covered with insulation. We think plaintiff in error should also be reasonably required to anticipate that, if such wire should break and fall and become charged with electricity, it would be in the back yard used in connection with the business houses, which it must have known the occupants used in connection with their business, and that therefore someone rightfully using such premises might likely come in contact with the same and receive a serious injury."

We turn our attention to the argument of freedom from negligence and liability on the part of the com-

pany because the placing of the aerial in the street should be regarded as a trespass or an unlawful use of that portion of the space above the street. To sustain the point, authorities are cited which relate to the unlawful occupancy of streets or roads because not authorized by the city or county, or a purpresture; i. e., the inclosure or appropriation to private use of that which belongs to the public. Those cases involved contests between the governmental authorities and the one claiming the right. We are cited to no case where an individual or private company sought to be relieved of negligence because the injured party was in a public street where his right to be had not been challenged by those having authority to do so.

> "The mere fact that a person or his property is in an improper position, when, if he had not been there, no damage would have been done to him, does not preclude him from recovering. Such circumstance is only a condition to the happening of the damage, not a cause of it." Lexington Utilities Company v. Parker's Admr., 166 Ky. 81, 178 S. W. 1173, 1175.

There is nothing in the petition or answer to raise the issue as to the right of either party to occupy the street with their respective wires. True it is there was a general plea of contributory negligence, but the rule of practice is that, if the condition or acts relied upon as contributory negligence existed or occurred either before or after the injury, to be available as the basis of an instruction, they must have been especially pleaded. It is only where the acts occurred contemporaneously with the accident or operated upon the pre-existing condition that a general plea is sufficient to authorize a specific instruction. Jellico Coal Mining Company v. Lee, 151 Ky. 53, 151 S. W. 26. The aerial was harmless, and became dangerous only when the defendant's current made it so. There is no evidence as to the right of occupancy or by what authority either the plaintiff or the defendant had their wires in the street. We may as well presume that the company, too, was a trespasser as to presume that the deceased had not secured a right to string his aerial across the street to his neighbor's house. The proximity of the aerial to the electric wire was certainly acquiesced in. The decision must be rested upon the theory that there was an equality of right of occupancy of space

above the street. Louisville Gas & Electric Company v. Beaucond, supra.

In such instances, the duty of electric companies extends to the exercise of the utmost care and diligence to prevent the escape of electricity through any wires brought in contact with its line (Paducah Light & Power Company v. Parkman's Admr., 156 Ky. 197, 160 S. W. 931, 52 L. R. A. [N. S.] 586), for, as stated in 9 R. C. L. 1215:

> "Only in this way can the public receive that protection due it while exercising its rights in the highways in or over which electric wires are suspended, and it has accordingly often been held that electric companies maintaining wires carrying heavy charges of electricity are under an obligation to maintain some kind of safeguard to prevent their contact with other wires."

A case in point on this proposition is City of Logansport v. Smith, 47 Ind. App. 64, 93 N. E. 883, where a lighting company knew of the existence and location of telephone wires in proximity to its wires for several years. When they came in contact, the telephone wires were electrified and caused a death. It was held that the company owning the telephone wires was not a trespasser upon the rights of the electric company. See, also, McKay v. Southern Bell Tel. & Tel. Co., 111 Ala. 337, 19 So. 695, 31 L. R. A. 589, 56 Am. St. Rep. 59.

One phase of the case of Kentucky Utilities Company v. Woodrum's Admr., 224 Ky. 33, 5 S. W. (2d) 283, 57 A. L. R. 1054, is in point. In cutting down a tree on their rented premises, three men were killed when it fell and broke an electric transmission wire passing along the highway. They were held not to be trespassers, as they were in their own yard, as was the tree, and the limb of the fallen tree came in contact with the wire without any intention on their part that it should do so.

Manifestly it cannot be held as a matter of law that the company was not negligent or owed the deceased no duty.

The claim that the deceased was guilty of contributory negligence is rested upon two grounds, viz. that he placed his antenna under the defendant's wire with knowledge that it was an electric wire, and that he knew the radio lead-in wire was charged with electricity. The

deceased's duty was to exercise only ordinary care for his own safety, and this question must be considered accordingly. What has been stated, we think, effectually answers the first proposition adversely. There is no evidence tending to show that the wire which he grasped was emitting sparks or otherwise giving evidence of its deadly condition at the time he took hold of it. Nor is there any evidence of knowledge on his part that his aerial was touching the electric wire, and consequently that he knew the lead-in wire was dangerous. He is not to be charged with constructive knowledge of the sagging and touching live wire. He saw some smoke issuing from his radio, which was an electric one, but we do not think that fact sufficient to charge him with notice of the perilous condition of the wire as a matter of law, such as where one takes hold of a dangerous wire plainly to be seen that it was such, as in the cases of Capital Gas & Electric Company v. Davis' Admr., 138 Ky. 628, 128 S. W. 1062; and City of Owensboro v. York's Admr., 117 Ky. 294, 77 S. W. 1130, 25 Ky. Law Rep. 1397, 1439, and some other cases cited and distinguished in Kentucky Power Company v. Kurtz, 236 Ky. 169, 32 S. W. (2d) 991. The facts place the case along with Lewis' Admr. v. Bowling Green Gaslight Company, 135 Ky. 615, 117 S. W. 278, 22 L. R. A. (N. S.) 1169; Lexington Utilities Company v. Parker's Admr., supra; Louisville Gas & Electric Company v. Beaucond, supra. The question of whether the deceased exercised ordinary care for his own safety in taking hold of the wire was properly submitted to the jury by an appropriate instruction.

The other instructions are criticized, but we do not regard the omissions pointed out as being prejudicial to the substantial rights of the defendant.

Judgment affirmed.