Bobby Gene CARR, By His Father and Next Friend, Bud Carr, Appellant,

v.

KENTUCKY UTILITIES COMPANY, Appellee.

and

Rodney Ray STURGILL'S ADMINISTRATRIX (Regina Fay Sturgill), Appellant,

v.

KENTUCKY UTILITIES COMPANY, Appellee.

Court of Appeals of Kentucky.

May 3, 1957.

G. E. Reams, Cawood Smith, Harlan, for appellant.

Malcolm Y. Marshall, Ogden, Galphin & Abell, Louisville, James Sampson, Harlan, for appellee.

CAMMACK, Judge.

On January 29, 1955, Rodney Ray Sturgill was electrocuted and Bobby Gene Carr was seriously burned when a television antenna being raised by Sturgill came in contact with high tension wires of Kentucky Utilities Company. Actions by the administratrix of Sturgill's estate and by the next friend of Carr, a minor, were tried together, and resulted in a directed verdict in each case for Kentucky Utilities. The appeals are from judgments on those verdicts.

The accident occurred near Black Bottom, a small settlement in the mountains of Harlan County. About 1800 feet from Black Bottom, up the side of a mountain, there ran a tap line of Kentucky Utilities. It was composed of three wires approximately 11 feet apart, strung on 25 feet long cross-arms, which were supported by two poles each. The path of the wires lay across the face of the mountain with the poles perpendicular to its slope, the downhill wire (the wire nearest the valley), running more than 20 feet above the surface, while the uphill wire was at least 13½ feet from the ground, and may have been as much as 17 feet therefrom. The right of way had been cleared less than three years before the accident, and the lines were unobscured by foliage. The area over which the wires were strung was described as rough terrain, "almost straight up," and was utilized by the inhabitants of Black Bottom for walking, hunting and kindling gathering. Several small family gardens were located on benches part way up the slope, but the nearest one to the power lines was more than 150 feet below the lines.

For some time before the accident, the Massengills had had difficulty in obtaining an adequate signal from the television set in their home at Black Bottom. In the late fall of 1954, Sturgill had assisted Condy Massengill in moving the antenna part way up the nearby mountain, 450 feet below the power line and 1,350 feet from

Massengill's home. Reception remained poor, however, and acting on neighbors' advice, in January, 1955, Sturgill and Massengill again moved the antenna to a point directly below the downhill wire. It was Massengill's understanding that he would be able to pick up a signal from the wires if his antenna were placed near them. There was then a clearance of about seven feet between the downhill wire and the top of the antenna.

This change did little to improve TV reception. On January 29, 1955, while the Sturgills were visiting the Massengill home, a further attempt was made to get a better picture on the screen. Rodney Sturgill got Bobby Gene Carr, an 11 year old boy, and Harold Canady, a companion, to accompany him up the mountain. When the group reached the antenna, Sturgill pulled it out of the ground and climbed on top of a small bluff under the uphill wire. There he found a dead tree stump three or four feet high. The uphill wire was in clear view, unobstructed by growth. The antenna was mounted on one end of a metal pipe approximately 13 feet long. While attempting to insert the bottom of the pipe into the stump, the antenna came in contact with the uphill wire, and Sturgill was electrocuted. Carr was at that time standing below the bluff some distance away, holding a wire which was connected with the antenna. His hands and feet were severely burned by the electric current.

■ The appellants contend first that the exclusion of certain testimony introduced by them constituted prejudicial error. Massengill offered to testify as to the height of the uphill wire above the top of a rock near the dead stump. This was properly excluded; Massengill had only estimated the height, and furthermore, there was no testimony to show that Sturgill had ever gotten on top of the rock while he was placing the antenna. The distance between the uphill wire and the ground was at least 13½ feet, and evidence of this relevant fact was admitted. We are unable to see any relevance in the evidence offered by the appellants on this point.

■ Objection is made also to the exclusion of evidence directed to show that the land over which the Kentucky Utilities easement ran was owned by the Cornett-Lewis Coal Company, and that permission had been given Sturgill to enter the Coal Company's property to erect the antenna. Even if the evidence submitted clearly tended to prove these facts (and it did not), we fail to see that the appellants were prejudiced, since the question of their status insofar as the Cornett-Lewis Coal Company is concerned is immaterial under the view we take of the case.

■ The second ground for appeal involves a procedural question. The record before us does not show that at the time the motion for a directed verdict was made, there were also presented the grounds for the motion. CR 50.01 states that "A motion for a directed verdict shall state the specific grounds therefor." The primary purpose of the Rule is to fairly apprise the trial judge as to the movant's position; and also to afford opposing counsel an opportunity of arguing each ground before the judge makes his ruling. The attention of the trial judge can thus be focused on possible reversible errors, which might otherwise be obscure with only a general motion for a directed verdict. In the absence of a statement of the specific grounds for a motion for a directed verdict, this Court normally will not consider the question of the *denial* of the motion. Clay, CR 50.01; 5 Moore's Federal Practice, Par. 50.04 (2nd Ed.1951).

■ The situation is otherwise, however, when the motion is sustained by the trial judge. Such motions are usually made orally, and argued by counsel in chambers without benefit of a court reporter, so that even though specific grounds are in fact urged, this Court has no way

of knowing, except inferentially through the judge's opinion, what the grounds were. It must also be observed that this Court has in the past affirmed properly directed verdicts, if correct upon any ground shown by the record, even though they were pronounced upon erroneous grounds on the trial. Moore v. Wright, 277 Ky. 242, 126 S.W.2d 121. When we consider the usual practice of making a motion for a directed verdict, we believe it reasonable to presume that grounds were stated, even though not shown by the record, where the motion is sustained. If the motion is sustained, the appellant will not be heard to complain that there was no statement of specific grounds when (as here) he failed to raise the question as to the form of the motion on the trial. Quint v. Kallaos, 8 Cir., 1947, 161 F.2d 605; Fleming v. Harrison, 8 Cir., 1947, 162 F.2d 789; Barron & Holtzoff, Federal Practice and Procedure, Sec. 1073 (Rules Ed.1950).

 The last contention is that the verdict for Kentucky Utilities was improperly directed. The record shows clearly that Sturgill knew of the high tension wires before setting forth with the Carr boy to change the position of the antenna. It shows further that it was Sturgill's purpose to place the antenna even closer to the wires in his attempt to improve the television signal. His visibilty of the uphill wire was clear; he knew of its presence and consciously attempted to jab the antenna pole into a stump directly below it. As we stated in Vaught's Adm'x. v. Kentucky Utilities Company, Ky., 296 S.W. 2d 459, 463, "Reasonable care demanded that every precaution be taken to avoid contact with the wires." Instead of exercising caution, Sturgill deliberately placed the pole with the attached antenna as close as possible to the transmission line. Even if we assume some negligence on the part of Kentucky Utilities, his acts constituted contributory negligence as a matter of law. One cannot act except at his own peril in a place of great danger and remain oblivious of a known, obvious and serious hazard. Morrison & Conklin Const. Co. v. Cooper, Ky., 256 S.W.2d 505.

 The question is somewhat different with respect to Bobby Gene Carr, who at the time of the accident was several feet away from Sturgill. He was not actively participating in the erection of the antenna, and, but for his holding to a lead-in wire attached to the antenna, would not have been injured at all. A minor under the age of 14 is presumed to be not capable of contributory negligence. United Fuel Gas Co. v. Friend's Adm'x, Ky., 270 S.W.2d 946. Kentucky Utilities introduced no proof to indicate that Carr acted in any way unlike a boy of his age and experience might reasonably be expected to act. It is not contended that Sturgill bore such a relation to Carr that the negligence of Sturgill would be imputed to Carr. In this state of events, only if Sturgill's act were held to be a supervening cause of his injuries would Kentucky Utilities be freed of liability, assuming that negligence on its part was shown. From this record, we are not prepared to state as a matter of law that 13½ feet was a sufficient height for the high tension wires, even over the terrain in question. It remains, then, to determine whether Sturgill's act of negligence was such as to intervene between the possible continuing negligence of the Company and Carr's injury so as to free the Company from liability.

 The owner of extra hazardous instrumentalities is under a duty to use extreme care in their operation. Green River Rural Electric Co-op. Corp. v. Blandford, 306 Ky. 125, 206 S.W.2d 475. Omniscience, however, is not demanded, nor anticipation of acts so irregular or foolhardy as to be deemed unforeseeable by reasonable men. The presence of hunters and walkers, even picnickers and possibly gardeners, might reasonably have been known, even though they were trespassers on the Coal Company's land. But to require that Kentucky Utilities should have also anticipated a deliberate attempt to place

an antenna within inches of its lines is to impose too onerous a burden upon it. Notice that in the past several antennas had been placed near their lines would not amount to notice that someone would purposely place himself in so precarious a position. Even assuming that there was proof of negligence on the part of Kentucky Utilities, we must hold as a matter of law that Sturgill's act of negligence was a supervening cause of Carr's injuries. As was stated in Hines v. Westerfield, Ky., 254 S.W.2d 728, 729, "If * * * the ultimate injury is brought about by an intervening act or force so unusual as not to have been reasonably foreseeable, the intervening act is considered as the superseding cause and the original actor is not liable."

Judgment affirmed in both cases.