**Joseph Earl GOETZ, Appellant,**

v.

**GREEN RIVER RURAL ELECTRIC COOP-
ERATIVE CORPORATION, Appellee.**

Court of Appeals of Kentucky.

Jan. 28, 1966.

George V. Triplett, David C. Brodie, Owensboro, for appellant.

Clarence Bartlett, Woodward, Bartlett & McCarroll, Owensboro, for appellee.

MONTGOMERY, Judge.

Joseph Earl Goetz appeals from a judgment in favor of Green River Rural Electric Cooperative Corporation based on an adverse directed verdict. It is necessary to consider only the question of the negligence of the appellant.

Goetz was injured when a television antenna held by him came in contact with appellee's high voltage line. It extended alongside and parallel to the property line of appellant's lot. Appellant said that he had not seen and did not know of the existence and location of appellee's line. He had recently purchased the property and prior to the date of injury had been on the premises three times, twice when it was dark and once on another occasion when he did not alight from his car.

Appellee's 7200 volt line was carried by two wires, one above the other, on poles and was 28.2 feet above the ground. At the north end of appellant's house attached to the eave of the garage there was a tripod television tower which was 34.2 feet in height. The two wires which made up the power line were about six feet below the top of the tower and 6.9 feet from the tower.

The injury occurred on March 28, 1964, near 5 p. m. Appellant had unloaded furniture from a truck into the house and garage that afternoon. As appellant climbed the television tower to install a ten-foot antenna his back was turned toward the power line. When appellant started to insert the antenna in the tower, "A gust of wind come and blew it over on the wire and after that * * * that's all I remember happening," he said. He fell onto the garage roof and rolled off onto the ground. The circumstances were such that there seems to be no doubt that the antenna came into contact with the power line and appellant was thus injured.

He seeks to avoid any responsibility for the injury by saying that he had never seen the power line and had no previous knowledge of it. He admitted that there was no obstruction which would have barred his view and that he could have seen the power line if he had looked. Three photographs introduced as exhibits clearly reveal both wires which made up the power line, the television antenna, and its proximity to the power line. The injury occurred in broad daylight. It is hard to understand how anyone approaching the tower for the purpose of affixing an antenna to the top thereof could fail to see the power line. The fact that his back was to the power line as he climbed the tower does not explain why he did not see the line before he started to ascend. It is argued that the evidence showing that appellant rolled down the roof is sufficient to show that he had turned around and was facing the power line and should have seen it.

Appellant was twenty-six years of age and had a general knowledge of electricity and the danger therefrom. He was sufficiently acquainted with electricity to know how to affix an antenna to a television tower.

The duty to exercise ordinary care for one's own safety is imposed on everyone. The care required to be exercised is measured by the circumstances of the particular case. The greater the hazard the greater the care required. McWilliams v. Kentucky Heating Co., 166 Ky. 26, 179 S.W. 24, L.R.A.1916A, 1224. The Court has had occasion to consider other cases in which the injured party sought to excuse himself from responsibility by saying that he did not see that which caused his injury which should have been seen. The duty to exercise ordinary care for one's own safety requires that one must use his senses in a way that ordinarily prudent persons would do under similar circumstances. Thus, one will not be heard to say that he did not see or hear an approaching train when the facts make it certain that the train should have been seen or heard. Nashville, C. & St. L. Ry. Co. v. Stagner, 305 Ky. 717, 205 S.W.2d 493; McCarter v. Louisville & N. R. Co., 314 Ky. 697, 236 S.W.2d 933; Louisville & N. R. Co. v. Tomlinson, Ky., 373 S.W.2d 601. One who fails to exercise such care for his own safety is guilty of negligence which bars a right to recovery. Louisville & N. R. Co. v. Fisher, Ky., 357 S.W. 2d 683. Mental abstraction which is not due to any surrounding circumstances does not excuse inattention to a known danger or one that should have been seen. Vaughn v. Jones, Ky., 257 S.W.2d 583; Farris v. Summerour, Ky., 296 S.W.2d 708.

The danger inherent in power lines and electric lines generally needs no elaboration. In Electric Plant Board of City of Russellville v. Dotson, Ky., 304 S.W.2d

779, involving an electric wire, the Court said:

"In two recent cases dealing with overhead wire, we have said that reasonable care demands that every precaution be taken to avoid contact with an electric wire. Vaught's Adm'x v. Kentucky Utilities Co., Ky., 296 S.W.2d 459; and Carr v. Kentucky Utilities Co., Ky., 301 S.W.2d 894. * * *"

See also Kentucky Power Co. v. Gevedon, Ky., 343 S.W.2d 381; Jackson County Rural Electric Coop. Corp. v. Massey, Ky., 346 S.W.2d 484.

In Jones v. Kentucky Utilities Co., Ky., 334 S.W.2d 263, a youth fifteen years of age was held guilty of negligence barring a recovery when he climbed on top of a bridge and came in contact with electric transmission wires located 43 inches above the top level girder and 13 inches from its edge. It was held that the youth was deemed "to be chargeable with an awareness of danger from the close electric wires." It is concluded, therefore, that appellant's failure to exercise his senses to ascertain the presence of the power line constitutes such negligence as to bar his right to recovery.

Appellant cites certain alien authorities which are not controlling in view of the domestic authorities. To sustain the proposition that the question of appellant's contributory negligence was for the jury, he cites a number of cases which may be distinguished on the basis set forth in Kentucky Utilities Co. v. Black's Adm'x, 244 Ky. 562, 51 S.W.2d 905, one of the cases cited by him. In the later cases of Jones, Gevedon, Massey, Dotson, Vaught, and Carr, recovery by the injured person was held to have been barred by his own negligence. Dunn v. Jackson Purchase Rural Electric Coop. Corp., Ky., 374 S.W.2d 190, is distinguishable on its facts. Blackwell's Adm'r v. Union Light, Heat & Power Co., Ky., 265 S.W.2d 462, was also relied on, but see Union Light, Heat & Power Co. v.

Blackwell's Adm'r, Ky., 291 S.W.2d 539, 87 A.L.R.2d 264.

Judgment affirmed.

MOREMEN, C. J., and MILLIKEN, J., dissent.

MILLIKEN, Judge (dissenting).

I think enough uncertainty can be conjured up here as to what a reasonable man would do in the circumstances of this case as to require submission of the issue to a jury, and that the circumstances in which Goetz acted were not calculated to alert him so forcefully to the dangers at hand as to render his conduct negligent as a matter of law. When we view the evidence in the light most favorable to Goetz, his freedom from contributory fault appears possible—possibly probable—a jury question. Let us view the evidence that way for a moment.

There is no evidence that Goetz actually saw the power line—but let us assume that he is charged with the responsibility for having seen it. What would he have seen? The evidence reflects that the lines are slightly smaller than an ordinary house service electric line; their darkened color, admitted in evidence, readily presented the appearance that the lines were insulated. While it is true that it is not practicable to insulate high voltage lines, it is both practicable and usual that normal service lines are insulated. The simple truth is that Goetz (or the ubiquitous ordinary man exercising the care usual in such circumstance) could very well have believed that these lines were nothing more than telephone lines, telegraph lines, or innocent, insulated house service electric lines. All of which is to point up the fact that these lines presented an innocent, innocuous appearance—not an appearance of deadliness or extreme hazard. I think it is obvious that an ordinarily prudent person will take for granted, uncritically, those surroundings and circumstances which do not pre-

sent to him an obvious danger. By way of illustration—Goetz would certainly have noticed and acted accordingly if he had seen or heard a tiger on that pole—he may have dismissed a squirrel as inconsequential. I like to believe that I am a reasonable man, and it disturbs me that the majority of my colleagues conclude as a matter of law that reasonable men cannot differ on the legal consequences of a factual situation like this.

It seems to me that the very facts which militate against holding Goetz contributorily negligent as a matter of law create an issue for the jury as to the company's negligence. The company is charged with a very high degree of care because of the dangerous propensities of electricity—particularly high voltage electricity transmitted through uninsulated wires. The company knew—or is clearly charged with knowledge—that the high voltage line was in dangerous proximity to the antenna and it knew, or ought to have foreseen, that an occupant of the Goetz property would have occasions to mount the antenna tower to service the antenna. In other words, there was foreseeability as to the company that this sort of situation would arise. Moreover, the company knew that copper wires do darken and that they do give the appearance of ordinary insulated lines.

Without any thought of a comparative negligence theory, it is, I think, appropriate to examine the relative opportunities of these parties. For the company, it would have required very little to make the danger obvious. A very simple procedure (and quite normal in my observation) would have been to place conspicuous danger or high voltage signs somewhere near normal eye level. Another would have been to shield these wires at their dangerous proximity to the aerial area. More devious means would include the removal of the line to a less dangerous spot or the raising of the line sufficiently above the aerial.

For these and other reasons, I am disappointed that my colleagues have affirmed a directed judgment ignoring all of these factors. In my view, this plaintiff was not nearly so guilty of contributory negligence as was Dunn in the recent case of Dunn v. Jackson Purchase Rural Electric Cooperative Corporation, Ky., 374 S.W.2d 190 (1963), where we reversed a directed judgment for the company because we thought a jury question was presented.

I am pleased that another reasonable man, Chief Justice MOREMEN, joins me in this dissent.