## American District Telegraph Company and City of Louisville v. Oldham.

### (Decided May 14, 1912.)

### Appeal from Jefferson Circuit Court (Common Pleas, Third Division).

1   Municipalities—Not Bound to Inspect Poles of Public Service Corporation.—A city is not bound to inspect the poles of a public service corporation and this rule applies though the city used the pole for years before the company took charge of it.

2.   Municipalities.—A city is bound to keep its streets reasonably safe and is liable for an injury from the fall of a dangerous pole if it knew of the danger and it knows the danger where the facts known to it would apprise a man of ordinary prudence of the danger.

3.   Municipalities.—Neither the city nor the company is liable where the fall of the pole was caused by the strain of the reel on a fire hose wrapped around the pole by a fireman, this being a use for which the pole was not intended.

4.   Appeal—When Record Not Incomplete.—A record is not incomplete because a pole exhibited to the jury on the trial is not brought to the Appellate Court.

RICHARDS & RONALD, A. B. BENSINGER and GEORGE H. FEARONS for American District Telegraph Company.

HUSTON QUIN, C. B. BLAKEY for City of Louisville.

O'DOHERTY & YONTS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Reversing.

Samuel Oldham was a fireman in the employ of the city of Louisville, and had been for thirteen years previous to December 17, 1909. On that day an alarm of fire was turned in at Clay and Caldwell streets about five squares from the engine house where he was stationed. His crew responded to the alarm. He and a man named Connaughton were riding on the reel, and when they reached a point about 50 feet west of Clay street, they jumped off, each having hold of the hose, for the purpose of unwinding it from the reel, which was driven on up the street. A guy post, some 10 or 12 feet in length, stood not far from where they got off the reel, and for the purpose of holding the hose, he or Connaughton, or both of them, wrapped the hose around the guy post. After this was done, Oldham started to the engine, which had driven up in the meantime, and as he went from the guy post to the engine, the post fell upon him and inflicted injuries, to recover for which he brought this suit against the city of Louisville and the Amercan District Telegraph Company. The guy post had a wire running from it to a telegraph pole, which stood at the corner of Clay and Caldwell streets. Prior to 1899 the City's Fire Alarm Service had an alarm box on this pole. About that time the American District Telegraph Company placed one of its wires on the pole. Four or five years later, the wires and box of the Fire Alarm Service were removed from the pole, and from that time up to the accident, the pole had been used only by the American District Telegraph Company. There is no proof in the record as to who erected the pole or the guy post, except as this may be inferred from the fact that for many years the pole was used only by the City's Fire Alarm Service. The guy post which broke was hollow at the ground and rotten. The plaintiff's evidence tended to show that it fell from its own infirmity. The evidence for the defendants showed that as the reel went on up the street, the chain jumped off the side of the spool and prevented it from revolving, thus putting a strain upon the hose, which was wrapped around the post, and that this strain pulled the post down. On this evidence the court instructed the jury as follows:

"Instruction Number One. The court instructs the jury that the law made it the duty of the defendant, the city of Louisville, and of its agents and servants charged by it with the care and inspection of its highways, to

exercise ordinary care in the inspection thereof, and to have and maintain the same in a condition reasonably safe for the use of the public, and if the jury shall believe form the evidence that the pole, in the evidence referred to, by which plaintiff was injured, was at and prior to the happening of plaintiff's injury in such a decayed, rotten and dangerous condition as to render its fall by reason of such condition probable, and if the jury shall further believe from the evidence that the decayed, rotten and dangerous condition of said pole, if it was in such condition, was known to the city of Louisville, or to its said agents, or any of them or could have been known to them or to any of them by the exercise of ordinary care, long enough prior to the happening of plaintiff's injury to have enabled the said defendant, or its agents, by the exercise of ordinary care, to have removed the said pole from the highway, and if the jury shall further believe from the evidence that the said pole, by reason and because of its rotten, decayed and dangerous condition, fell upon plaintiff, and that he was thereby injured, then the law is for the plaintiff as against the city of Louisville, and the jury should so find.''

''Instruction Number Two. As to the defendant, the American District Telegraph Company of Kentucky, the court instructs the jury that if they shall believe from the evidence that, at and prior to the happening of plaintiff's injury, the pole, by which he was injured was being used by the said defendant as a guy pole, and was attached by a guy wire to the pole on the corner of Clay and Caldwell streets, to which said pole the wires of the said defendant were then attached, and if they shall further believe from the evidence that the said guy pole was, at the time of plaintiff's injury, in a decayed, rotten and dangerous condition, and that its decayed, rotten and dangerous condition was known to the said American District Telegraph Company of Kentucky, or its agents charged by it with the care and inspection of its poles, or could have been known to them, or to any of them, or to the said defendant, by the exercise of ordinary care, and if the jury shall further believe from the evidence that the said guy pole by reason and because of its unsound, rotten and decayed condition, if it was so unsound, rotten and decayed, fell upon plaintiff and on the occasion in the evidence referred to and

that plaintiff was thereby injured, then the law is for the plaintiff, and the jury should so find.''

''Instruction Number Four. The court instructs the jury that although they may believe from the evidence that the defendant's associate or co-employe, Connaughton, wrapped the hose, in the evidence referred to, around the guy pole in the evidence referred to, and that by reason thereof the said pole was exposed to a certain amount of pressure, and that the act of the said Connaughton contributed to the fall of the pole, such act on the part of the said Connaughton does not excuse the defendants, or either of them, if the jury shall believe from the evidence that but for the decayed and rotten condition of the said pole, if it was so decayed and rotten as to be unsafe and to render its fall probable, the said pole would not have fallen, and the plaintiff would not have been injured.''

The jury found for the plaintiff against the city in the sum of $4,000, and against the telegraph company in the sum of $2,000. The court refused a new trial, and entered judgment on the verdict. The defendants appeal.

Each of the defendants insists that the court should have instructed the jury peremptorily to find for it under the evidence, and that the instructions given the jury were erroneous, if the case should have been submitted to the jury.

1. As to the city of Louisville:

Although the city erected this pole and used it for a number of years, still if it ceased to use it and the District Telegraph Company then took charge of it, the city was thereafter under no greater obligation to look after this pole than any other pole in the use of the telegraph company. The telegraph company, it is true, made no agreement with the city before it took possession of the pole and began using it. It had been in possession of the pole for a number of years when the accident occurred. The pole stood to all intents as one of its poles, and the obligation to keep it safe rested primarily upon it. After the telegraph company took possession of the pole, the city had the right to anticipate that it would do its duty. The city is not required to inspect the poles, wires and other structures belonging to public service corporations, and placed in the streets under their franchises. We do not see that this pole can be distinguished from the pole of any telegraph or lighting company in

Louisville, erected by it and used for its own purposes. The precise question was before Justice Shiras, in City of Denver v. Sherret, 88 Fed., 226. In that case, after referring to an instruction given by the trial court which imposed this duty upon the city, the court said:

"If this is a correct statement of the law, it follows that with respect to all the appliances in the shape of poles, wire, lamps, cables and the like placed in the city streets, by telephone, telegraph, electric light, electric power, electric and cable street car companies, there rests a primary duty and obligation upon the city to keep them in safe condition, and to make the inspection necessary to detect defects in order that the same may be promptly repaired. If this duty rests upon the city, then it will be compelled to keep in its employ men who possess the knowledge and skill needed to detect defects, and, when detected, to repair and keep in proper condition, the electric wires and the cables and other appliances used in the streets; and it is apparent that this would of necessity lead to a conflict in many instances between the city and the companies owning and operating the electric and cables plants."

But while the primary duty to keep the post in a safe condition rested on the telegraph company the city could not with impunity, knowing its dangerous condition, hold out the street to the traveling public as a safe highway. The pole stood in the street. The rule maintained by the weight of authority as to the duty of the city in such matters is as follows:

"The duty of a municipal corporation to keep its streets in safe condition requires it to take reasonable precaution against dangers from overhead as well as under foot. The danger and the unsafety may be as great and the consequences as injurious, as in the case of a defect in, or obstruction upon, the surface of the street; and a city has been held liable for injury to one struck, without contributory negligence, by a structure or object overhanging or projecting into a street dangerously low. On the same principle, the liability of cities for injuries occasioned by the fall of dangerous and insufficiently supported structures, which have negligently been permitted to overhang a street, has been maintained in many cases. But the liability of the city in such cases can arise only when the notice of the danger has actually come to the servants of the corporation,

or may be imputed to them while in the ordinary exercise of their duty.'' 28 Cyc., 1379.

To the same effect see 2 Smith on Municipal Corporations, Section 1542; 4 Dillon on Municipal Corporations, Sec. 1705.

Under the scintilla rule, which maintains in this State, there was sufficient evidence for the plaintiff to take the case to the jury; but Instruction One is erroneous in so far as it places upon the city the duty of inspection. The word "inspection," wherever it occurs, should have been omitted in Instruction One. Also the words "or could have been known to them, or to any of them, by the exercise of ordinary care." The court will also add to Instruction One these words: "Unless the jury find as set out in Number Four." By another instruction the court will tell the jury that if the facts known to the city or its officers, referred to in Instruction One, were sufficient to apprise a person of ordinary prudence that the pole was rotten, and in a dangerous condition, then they knew its condition, within the meaning of that instruction.

2. As to the American District Telegraph Company:

The District Telegraph Company was using the telegraph pole at the corner for its wire, and a wire connected this pole with the guy post. The reason for the guy wire was that without it there was danger of the pole at the corner being pulled out of its position. The guy post was a part of the telegraph pole, and the telegraph company was as much responsible for the guy post as for any pole in its possession. It alone had had possession of the pole for years, and the duty was imposed upon it to keep its pole and post in a reasonably safe condition. The post should have been strong enough not only to hold the strain that would come upon it from the guy wire, but it should also have been strong enough to withstand such strains as might reasonably be anticipated from persons passing along the street, or from wagons and teams driven thereon. If the post had fallen by reason of some person running against it, or some team striking it, a very different question would be presented, for it was incumbent upon the company to keep its post in a reasonably safe condition, considering the strains which it might reasonably be anticipated would be put upon it from such causes. But the company was not required to anticipate that a fire hose would be wrapped around its guy post,

or to keep it strong enough that it would withstand the strain that might be put upon it in this way, when the reel was driven up the street, and for any reason the reel ceased to revolve. If Oldham or his associate wrapped the hose around the post, and it was caused to fall by the strain that was thus put upon it by the reel, when it would not have fallen but for this unusual strain, the company is not liable.

On another trial, the court will add to Instruction Two these words: "Unless the jury find as set out in Number Four." In lieu of Number Four, the court will instruct the jury that if the plaintiff or his associate wrapped the hose around the post, and the strain of the reel on the hose caused the post to fall when it would not otherwise have fallen, they should find for the defendants.

It was incumbent upon the telegraph company to maintain its pole in a reasonably safe condition for the purposes for which it was intended, and to keep it sufficient to withstand such strain as might reasonably be anticipated from the travel on the street. If the pole had fallen from a wagon running against it, or from the crowd on the sidewalk jostling against it, the question of concurrent negligence would be presented. But the company was under no obligation to maintain a pole in such a condition that a fireman might safely wrap a hose around it, and if the strain of the hose caused the pole to fall, this use of the pole for a purpose for which it was not intended was the proximate cause of the injury. Georgetown Telephone Co. v. McCulloch, 118 Ky., 182; Sydnor v. Arnold, 122 Ky., 557; I. C. R. R. Co. v. Mercer, 24 R., 908, 70 S. W., 287. The case would not be essentially different if a builder had fastened to the post a rope sustaining a derrick, and this had pulled the post down and caused it to strike Oldham.

The declarations of Oldham as to how the accident occurred are substantive evidence against him, and may be proved without his being first interrogated as to them, pursuant to Section 597 of the Civil Code.

The post which fell was introduced before the jury, and it is not before us. Appellee makes the point that all the evidence is not here, and that the judgment must for this reason be presumed correct. But all the evidence is here within the meaning of the rule. Oldham was also in person before the jury, and if the contention now made were sustained, it would be necessary in

this class of cases to have the plaintiff before this court when an appeal is taken. The jury is often sent to view the land or thing in contest, but it has never been supposed necessary that this court should also view it. We must assume in the absence of the post, that its appearance sustained the testimony of the witness who exhibited it, and that Oldham's appearance sustained his testimony as to his condition at the trial; but a view of the post could throw no light on the propriety of the instructions of the court to the jury. All the evidence is here throwing any light on this matter. Were the rule otherwise, no case could be heard here on the merits where the jury had viewed the premises under an order of court.

Judgment reversed and cause remanded for a new trial and further proceedings consistent herewith.