## McWilliams v. Kentucky Heating Company, et al.

(Decided October 5, 1915.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, First Division).

1. Negligence—Concurring Negligence of Two Parties—Effect of.—The negligence of one party does not excuse from liability a third party also guilty of negligence, if the injury complained of would not have happened except for his negligence.

2. Negligence—Concurring Negligence—Separate Action.—If the injuries caused by the concurring act of two persons are plainly separable so that the damage caused by each can be distinguished, each would be liable for the damage which he caused; but if this is not the case, all the persons who contributed to the injury by their negligence are liable jointly or severally for the whole damage.

3. Highways—Gas Mains—Duty of Company Laying Gas Mains in Highway.—Where a corporation secured the right to lay its gas mains in a highway it was under a duty to exercise ordinary care to continually keep and maintain the gas mains in such manner as to have the highway from day to day in such condition as that it would be a reasonably safe place, considering the uses and travel to which it might be anticipated it would be subjected from day to day.

4. Negligence—Ordinary Care—Definition of.—Ordinary care to maintain a place or thing in safe condition is a variable and not a stationary degree of care. It changes as the conditions under which it is to be exercised change, and keeps pace with these conditions, so that the place or thing, under all conditions that it may reasonably be foreseen or anticipated will arise, will be in a reasonably safe condition.

5. Negligence—Ordinary Care—Duty to Take Notice of Changed Condition.—Where a corporation secured the right to lay gas mains in a highway, this imposed on it the duty to take notice of the uses and travel to which it might reasonably be anticipated the highway would be subjected in the future, and to take notice of the future use and travel and exercise such care as might be necessary to maintain the main in reasonably safe condition to meet its requirements.

6. Negligence—Ordinary Care—Extraordinary Condition.—A corporation that secured the right to lay its mains in a highway was not obliged to undertake to provide against extraordinary or unusual conditions that it could not reasonably have anticipated would arise, but it was under a duty to take notice of new methods and machinery employed by the county in the reconstruction and repair of its highway.

7. Negligence—Proximate Cause—What Constitutes—When Question for Jury.—Where a person was injured when the road-work-

ing machine he was operating came in contact with a gas main near the surface of the highway, thereby causing an explosion, it was a question for the jury to say, under all the circumstances surrounding the transaction and developed in the evidence, whether the owners of the gas main should have anticipated or foreseen the use to which the highway might be subjected by the type of machinery the county was using in the repair of its highways.

8. Negligence—Facts Stated.—A corporation obtained the right to lay gas mains in a public road. Several years after this the county authorities used in the working of this said road a heavy machine roller with spikes about four inches long in the wheels for the purpose of tearing up the macadam. The machine was run over the road where the gas main was laid and the spikes punctured the main, thereby causing an explosion in which the engineer of the machine was injured. The gas main was near the surface of the road and the machine had been in use by the county for about twelve years before the accident: Held to be a question for the jury to say whether the corporation laying the main exercised ordinary care to keep it in reasonably safe condition for the uses and travel to which the road might be subjected.

EDWARDS, OGDEN & PEAK, P. T. SULLIVAN and L. J. MACKAY for appellant.

FRED FORCHT and MATT O'DOHERTY for appellees.

OPINION OF THE COURT BY JUDGE CARROLL.—Reversing.

This appeal is prosecuted by the appellant from the judgment of the lower court directing the jury to return a verdict in favor of the appellees in a suit he had brought against them to recover damages for personal injuries. The appellant, at the time he sustained the injuries complained of, was employed by Jefferson County as the engineer of a steam roller in the reconstruction and maintenance of a county road of Jefferson County known as the Eighteenth Street Road. The steam roller being operated by appellant weighed about 26,000 pounds. It was so constructed that there was one small roller or wheel in front and two large rollers or wheels in the rear. These large rollers or wheels in the rear had each twenty-four holes in their surface. These holes were for the purpose of inserting steel spikes about four inches long, which spikes could be placed in the holes and taken out at the pleasure of the person in charge of the machine. When it was desired in the reconstruction of a macadam road to

tear up the roadbed, these spikes were placed in the wheels, and as the machine was run over the road they loosened up the surface of the macadam somewhat in the manner that it might be loosened by a pick, plow, or harrow. When it was desired to roll the surface of the road the spikes were taken out of the wheels and the machine run over the road, thereby making it compact and solid.

At the place where the appellant was injured the road was forty feet wide. Sixteen feet of this forty feet was a macadam road and about twenty-four feet of it was what is known as a summer or dirt road, and at the time of the accident the county authorities were engaged in the reconstruction or repair of the macadam on this road, and in this work had been using the steam roller.

In the course of the work the appellant was directed by the county officer in charge to run the roller in the summer or dirt road several hundred feet to a point where it would be needed for use on the macadam road so that it would not disturb the macadam road between the place it was standing when the order was given and the place to which he was ordered to remove it. While running the roller down this dirt road as he was directed to do, the spikes in one of the wheels punched holes in an iron gas pipe that had been placed in this summer or dirt road, and when these holes were so made, the escaping gas came in contact with the fire in the engine, causing an immediate explosion and the envelopment of the engine in flames. When the explosion occurred and the flames surrounded the engine, the appellant, who was operating it, was severely burned and injured, and to recover damages for the injuries so sustained he brought this suit.

It is further shown by the record that in 1890 the appellees obtained from the Valley Turnpike & Gravel Road Company, a private corporation that then owned and operated this road as a toll road, a right-of-way over the road for the purpose of conveying natural gas from gas fields in Meade County, Kentucky, to Louisville, Kentucky. This right-of-way was evidenced by a written contract between the turnpike company and the appellee, in which it was provided, among other things, that the gas company "agrees and binds itself to keep the line of pipe ditch in proper condition, well filled until thoroughly settled so as not to interfere with ordinary travel, and

any metal or other material necessary to maintain said line in good condition must be furnished by said second party.''

Pursuant to this contract the gas company laid an eight inch wrought iron pipe, 5-16 of an inch thick, from its gas fields in Meade County over and along the road to Louisville. This pipe was laid in a ditch made in the dirt road about nine feet from the edge of the macadam and covered over with dirt, the pipe being laid, in many places, at an average depth of about one or two feet below the surface of the earth; at other places nearer to the surface. It is further shown that at the time and place of the accident the dirt or earth which covered this gas pipe had worn or washed away, or the mains had been originally placed near the surface, so that the top of the gas main was only an inch or two below the surface of the road bed.

It is further shown that about 1901 the county of Jefferson purchased this turnpike road from the turnpike company and converted it into what is known as a free turnpike, and it was thereafter operated and maintained by the county. The evidence further shows that steam rollers of the type, size, weight and equipment of the one being operated by appellant had been used in the repair of the roads of the county for about twelve years before the accident, and at that time the county had nine of them in use. It should also be noted that the county officials in charge of the road work knew the mains were in the dirt road although appellant did not.

The foregoing statement of fact fairly represents the evidence offered by appellant but which was not considered sufficient by the trial court to take the case to the jury.

In support of the ruling of the lower court, it is argued by counsel for appellees that the law did not impose on them the duty of maintaining gas pipes so far below the surface or sufficiently strong or sound to prevent the same being punctured by the spikes in the wheels of a machine of the character operated by appellant; and, further, that the proximate cause of the gas escaping was the independent, intervening act of the appellant in operating the roller with the spikes in the wheels over the dirt road, an act which could not have been reasonably anticipated by appellees. The further argument is made that the officials of Jefferson County knew that the gas main was in the road and should have notified appellant,

if he did not know of its existence, and this knowledge on the part of these officials relieved appellees from liability.

Disposing first of the argument, that the knowledge of the county officials that the gas main was in the road, transferred to the county liability for the accident. The evidence shows that the appellant had no knowledge whatever of the fact that this gas main was in the road, although it does appear that the county officials in charge of the construction of the road at this point knew that this main was in the road; they did not, however, know it was so close to the surface as that it would be punctured by the spikes in the roller. But the knowledge of the county officials, or whether they did or did not know of the closeness of the main to the surface of the road, is not a material factor in the dispostion of this case. The appellant is not to be dismissed because the county officials were guilty of some want of care, nor are the appellees to be relieved from liability even if it should be assumed that the negligence of the county officials was a contributing cause in producing the accident that caused the injury. We think it is a well settled rule in the law of negligence that the negligence of one party does not excuse from liability a third party, also guilty of negligence, if the injury complained of would not have happened except for his negligence. So that if we should assume that the county authorities were negligent and that their negligence concurring with that of the appellees, produced the injury, the right of action created in the appellant against the appellees on account of their negligence is not in any manner impaired or diminshed by the negligence of the county officials if they were guilty of any.

In Sherman and Redfield on Negligence, Fifth Edition, volume one, Section 31, the well known rule on this subject is thus stated: "The mere fact that another person concurs or co-operates in producing the injury or contributes thereto, in any degree, whether large or small, is of no importance. If the injuries caused by the concurrent acts of two persons are plainly separable, so that the damage caused by each can be distinguished, each would be liable for the damage which he caused; but if this is not the case, all the persons who contribute to the injury by their negligence are liable, jointly or severally, for the whole damage. It is immaterial how many others have been in fault if the defendant's act was

an efficient cause of the injury.'' Sydnor v. Arnold, 122 Ky., 557; City of Louisville v. Hart's Admr., 143 Ky., 171; City of Louisville v. Arrowsmith, 145 Ky., 498; City of Louisville v. Bridwell, 150 Ky., 589.

We may, therefore, leave entirely out of view any supposed negligence or want of care on the part of the county officials. The issue whether they were negligent or not has no place in this case. If the appellees were guilty of actionable negligence, the appellant has the right to maintain this action against them without regard to any negligence on the part of the county officials that may have contributed to the injuries complained of.

Having this view of this feature of the case, we will now proceed to inquire into the sufficiency of the other arguments advanced by counsel for appellees in support of the contention that the ruling of the trial judge was proper.

The contract obligated the appellees to keep their line of pipes in proper condition and in such a way as not to interfere with ordinary travel on the road. The meaning of this condition, as we construe it, is that the appellees undertook to exercise ordinary care to continually keep and maintain the gas mains in such manner as to have the road from day to day in such condition as that it would be reasonably safe, considering the usage and travel which it might be reasonably foreseen or anticipated it would be subjected from day to day. Ordinary care to maintain a place or thing in safe condition under a state of facts such as we have, is a variable and not a stationary degree of care. It changes as the conditions under which it is to be exercised change, and keeps pace with these conditions, so that the place or thing, under all conditions that it may reasonably be foreseen or anticipated will arise, will be in a reasonably safe condition.

It cannot be maintained that public service or other corporations may occupy public roads, under a contract or otherwise, and be held to a less degree of care than we have laid down. A private corporation having the right to own and control a public road, as did the turnpike company, which gave to appellees the right to use the road for the purpose of laying their gas mains, can not let a contract for the use of part of the road and agree that the other party may exercise a less degree of care than would be consistent with the right of the public to

use the road with reasonable safety, nor can it contract that the use of the road may be such as to place it in condition that it would not be reasonably safe for public travel.

But it is insisted that the exercise of ordinary care on the part of the appellees in maintaining the gas main in such condition as to leave the road in reasonably safe condition for public travel did not impose the duty of anticipating or guarding against the danger that might follow from the use of the road by the character of machine being operated by appellant at the time of his injury.

It is doubtless true that the machine being used was of unusual size and weight, and that the spikes in the wheels added largely to the danger of its use, if, as in the case we have, they came in contact with the gas main. It is also likely that this type or character of machine was not in use in Jefferson County, or elsewhere in the State, when these pipes were laid twenty-five or more years ago. But the evidence is that this type of machine, equipped in the manner that it was when appellant was injured, had been in use on the roads of Jefferson County for some twelve years for the purposes for which it was being used at the time of the injury. So that this type of machine was not then either new or novel but on the contrary was a part of the usual equipment in use in the improvement of the highways of Jefferson County.

In view, therefore, of these conditions, it cannot be said as a matter of law that the cause that produced the accident was of such unusual and extraordinary character as that, in the exercise of the care required, the appellees could not have anticipated that this accident and resulting injury would happen. The duty appellees were under to exercise ordinary care to maintain the gas mains in reasonably safe condition for public travel, does not mean that they were only required to take notice of the kind and type of vehicles and machinery in use when the pipe was laid, or that they could rest content with conditions then existing without giving any heed to the progress in every department of road working and the changes and improvements constantly being made in all classes of road as well as other machinery.

It may also be conceded that the main, when first laid, was placed in such condition as to leave the road safe for the uses and travel to which the road was at that time

subjected. But the care demanded of appellees did not end when the main was laid. They were under a duty to exercise ordinary care to keep and maintain the main in such condition as that the road would be in reasonably safe condition, considering the uses and travel to which it might reasonably be anticipated it would be subjected in the future, and to take notice of the future use and travel and exercise such care as might be necessary to maintain the mains in reasonably safe condition to meet its requirements. The duty imposed upon the appellees to exercise ordinary care in the maintenance of these gas mains imposed upon them the duty of exercising ordinary care at all times while the mains were in the public road to guard against injury through any reasonable and proper use of the road, in view of the condition to which its use under modern methods might be subjected: Coulter v. Township, 164 Pa. State, 543; Clulow v. McClelland, 151 Pa. State, 583; Yordy v. Marshall County, 80 Ia., 405; Gregory v. Adams, 14 Gray (Mass.), 242; Kovarik v. Saline County, 86 Neb., 440, 27 L. R. A. (N. S.), 832; Board of Commissioners v. Coffman, 60 Ohio State, 527, 48 L. R. A., 455.

In laying down these rules we do not mean to hold that it was the duty of the appellees, in maintaining the gas mains, to provide against extraordinary or unusual conditions, or to anticipate and guard against accidents arising from extraordinary or unusual causes that could not reasonably have been anticipated to exist at the time the injury complained of occurred. But they were under a duty to take notice of the uses to which the roads in Jefferson County were put; to take notice of the new methods and machinery employed by the county in the reconstruction and repair of its roads, and to maintain the gas mains in such condition as that they would be reasonably safe for uses such as they were subjected to by the new methods and new machinery in use by the county.

It should further be kept in mind that ordinary care is to be measured by conditions as they arise. What would be ordinary care under one state of facts might be gross negligence under another state of facts. What would be ordinary care under some conditions and circumstances would be no care under other conditions and circumstances. Or, as said by Thompson on Negligence, volume one, Section 25: "The care, caution and diligence re-

quired by the law is always measured by the circumstances of the particular case, and the rule of admeasurement is, *the greater the hazard the greater the care required.*"

In the application of this sound principle to the facts of this case, it seems very clear that the exercise of ordinary care required that appellees should exercise a degree of care commensurate with the dangerous agency they were transporting in the public road, and not only guard against danger from the use of the road by ordinary vehicles but by such vehicles and machinery as it might reasonably be anticipated the county would use in the repair and reconstruction of its roads, and this could easily have been done by putting the mains deeper below the surface.

There is some suggestion by counsel that it was negligence to operate this machine on the dirt road, but there is no substance in this contention. The county had the right to use all parts of the road and to operate this machine in any part of it that suited its convenience.

The argument is also made that the negligence, if any, of the appellees in maintaining the gas mains so close to the surface of the road was not the proximate cause of the accident. It is said that the proximate cause of the gas escaping was the independent, intervening act of the appellant in operating the roller, with the spikes in the wheels, over the dirt road.

It is generally true, in cases like this, that to constitute proximate cause creating liability for negligence, the injury must have been the natural and probable consequence of the negligent act; or, in other words, the consequence that in the light of attending circumstances an ordinarily prudent man might have anticipated: Logan v. C., N. O. & T. P. Ry. Co., 139 Ky., 202; Sydnor v. Arnold, 122 Ky., 557.

But, as we have endeavored to point out, it cannot be said as a matter of law that appellees, in the exercise of the care required, could not have foreseen and anticipated that this accident might have happened. We think it was a question for a jury to say, under all the surrounding circumstances developed in the evidence, whether the appellees in the exercise of ordinary care could have known that their gas main was within an inch or so of the surface of the road in many places, and should have anticipated or foreseen the use to which the

road where this gas main was laid might be subjected by the type of machinery the county was using in the repair of its roads and the danger that might arise therefrom, considering the nearness of the gas mains to the surface of the road.

The case of American District Telegraph Co. v. Oldham, 148 Ky., 320, is strongly relied on by counsel for appellees as fully supporting the lower court in ruling that the appellant failed to make out a case; but we find such substantial difference between the facts in that case and the facts in the case we have, that a principle of law that might be entirely sound when applied to that case would have no pertinency when applied to this one. In the American District Telegraph Co. case it appears that Oldham, a fireman in the employ of the city of Louisville, responded with his company to an alarm of fire. When they reached the fire they wrapped the hose around a guy post used by the telegraph company for the purpose of running a wire from it to a telegraph pole. The guy post, which happened to be rotten, was broken off and pulled down by the strain put on it in operating the hose, and when it fell struck Oldham. In holding that the telegraph company was not liable, we said:

"It was incumbent upon the telegraph company to maintain its pole in a reasonably safe condition for the purposes for which it was intended, and to keep it in such condition to withstand such strain as might reasonably be anticipated from the travel on the street.   *   *   * But the company was under no obligation to maintain a pole in such condition that a fireman might safely wrap a hose around it, and if the strain of the hose caused the pole to fall, this use of the pole for a purpose for which it was not intended was the proximate cause of the injury."

It will thus be seen that the decision in that case was put distinctly upon the ground that the pole was being used in a manner entirely foreign to the purpose for which it was erected. The telegraph company, in the exercise of the highest degree of care, could not have anticipated that a fire hose would be wrapped around the pole, thereby subjecting it to a strain more than it could stand.

In the case we have the gas mains were in the public road, near the surface, and at a place where it was expected and intended that vehicles would go. We think the case should have gone to the jury, and that the court

erred in ruling as a matter of law that the appellant failed to make out a case for a jury.

Wherefore, the judgment is reversed for a new trial in conformity with this opinion.