ARKANSAS NATURAL GAS COMPANY *v.* OLIVER.

Opinion delivered December 3, 1928.

524

*Wynne & Miller,* for appellant.

*Philip McNemer,* for appellee.

HART, C. J., (after stating the facts). It is earnestly insisted by counsel for appellant that the evidence is not legally sufficient to warrant the verdict, and that, under the undisputed facts, the judgment should be reversed, and the cause of action dismissed. In this contention we think counsel for appellant are correct.

In the first place, there can be no recovery unless the gas company is shown to have been negligent. *Torrans* v. *Texarkana Gas & Electric Co.,* 88 Ark. 510, 115 S. W. 389.

This court has held that a public service corporation furnishing gas to consumers is required to use ordinary care in constructing and maintaining its gas pipes in such condition as to prevent the escape of gas, whereby a person or his property might be injured; and if it fails to use such care, and, by reason of such failure, loss or injury occurs, it is liable in damages. With respect to the responsibility for damages caused by the

escape of gas, our own court, in common with various others of last resort, determines the common law liability in such a case upon the principles of negligence applicable to the care and maintenance required of the handling of a dangerous substance or instrumentality. In such cases, ordinary care is commensurate with the danger to be avoided. *Pine Bluff Water & Light Co. v. Schneider*, 62 Ark. 109, 34 S. W. 547, 33 L. R. A. 366; *Pulaski Gas Light Co. v. McClintock*, 97 Ark. 576, 134 S. W. 1189, 1199, 32 L. R. A. (N. S.) 825; and *Little Rock Gas & Fuel Co. v. Coppedge*, 116 Ark. 334, 172 S. W. 885; and case-note in 25 A. L. R. 262.

In an effort to sustain the judgment, counsel for appellees seek to apply the principles announced in *McWilliams v. Kentucky Heating Co.*, 166 Ky. 26, 179 S. W. 24, L. R. A. 1916A, p. 1224. In that case the gas mains were in the public road near the surface, and at a place where it was expected and intended that vehicles should go. At the time of the accident the county officers were engaged in the reconstruction or repair of the macadam road near the dirt road, and in its work had been using a steam roller. In the course of the work the person injured was directed by the county officer in charge to run the roller along the dirt road next to the macadam road to a point where it would be needed for use on the macadam road. While doing this, the spike on one of the wheels punched holes in an iron pipe that had been placed in the dirt road, and the escaping gas, coming in contact with the fire in the engine, caused an explosion and the envelopment of the engine in flames. The dirt road was as much a part of the public road as the macadam road. The gas company was held to be under the duty to exercise ordinary care to keep and maintain its mains in such condition as that the public road would be in a reasonably safe condition, considering the uses and travel to which it might reasonably be anticipated it would be subjected at any time, and to take notice of the use and travel over the road, and exercise such care as might be necessary to maintain the road in a reason-

ably safe condition to meet such requirement. The court said that the duty imposed upon the gas company was to exercise ordinary care in the maintenance of its gas mains, and imposed upon it the duty of exercising ordinary care at all times, while the mains were in the public road, to guard against injury from any use of the road in view of the modern methods of use that it might be subject to. In the application of this rule it was the duty of the gas company to anticipate that it would be necessary to repair the macadam road, and that a steam roller might be driven over the dirt road alongside of the macadam road for that purpose. Hence it could not be said as a matter of law that the gas company, in the exercise of ordinary care, could not have foreseen this use of the road and was not required to anticipate that this accident might have occurred. In that case, however, the court recognized the law to be that the gas company in maintaining its gas main was not required to provide against extraordinary or unusual conditions, or to anticipate or guard against accidents arising from extraordinary or unusual causes which could not reasonably have been anticipated to exist at the time the injury complained of occurred. The county had a right to use all parts of the road and to operate the steam roller over any part of it that was necessary. Hence it was a question for the jury whether or not the gas company was negligent in not anticipating that the steam roller would have to be driven over the dirt road for the purpose of repairing the macadam road, and for that reason the gas company should have placed its main deep enough under the ground to prevent the steam roller from punching holes in them and thereby causing loss or injury.

In the case at bar the facts are essentially different. The gas main was laid under the ground on the land of a private person, under an easement obtained for that purpose. There was no leak in the gas main at the point where the accident occurred, and the pipe was laid a sufficient depth under the ground to prevent any injury

from any ordinary use that might have been made by the owner of the ground or any one else. The undisputed facts show that the pipe was laid and maintained by appellant in a perfectly safe condition for any use that the gas company might have anticipated would be made of it in the future, and that this condition had continued for 17 years. It was not required to make a continual inspection of its pipe lines in order to anticipate any extraordinary or unusual excavations which might cause injury to those making them. It was not required to anticipate that the road might be changed and a new road laid out, and a borrowpit constructed for the purpose of excavating dirt for the purpose of making a dump or roadbed on the new road. If a county or State officer desired to do this, notice should have been given to appellant, in order that it might have the right to test whether or not the public use or necessity would require it to change its pipe line. It must be remembered that it was under the duty to maintain its pipe line in a safe condition to furnish gas to its customers, and in the exercise of such duty it could not be required to tear up its pipe line for the purpose of securing a borrowpit for a change in the public road, unless the public necessity required such course. In any event it could not be required to change the location of its pipe lines without notice to do so, and an opportunity to be heard on the question.

The escaping gas and the ensuing explosion which caused the loss was not caused by any failure of appellant to keep the gas mains in safe condition. It was due solely to the act of appellee's servants in excavating the dirt in the borrowpit to an unusual depth, of which the gas company had no notice and of which it was not required to take notice.

The explosion was not due to the negligence of appellant, but was caused by the acts of appellees in making the excavation under such circumstances as constituted negligence on their part.

Under the undisputed facts, we are of the opinion that the loss complained of was not due to the negligence of appellant, but resulted from the negligence of appellees. Therefore the court should have directed a verdict in favor of appellant as requested by it. For the error in not doing so the judgment will be reversed, and, inasmuch as the cause of action seems to have been fully developed, it will be dismissed here. It is so ordered.

HUMPHREYS, J., (dissenting). Appellant was handling a dangerous commodity, and the law imposed a duty upon it to exercise ordinary care to prevent or avoid injury to all persons and their property engaged in repairing or reconstructing the road within the boundaries of the State highway, as designated in the condemnation proceeding.

The court sent the case to the jury upon the theory that appellant was liable for damages to the shovel, provided they found from the testimony that it had a pipe line, through which it conveyed gas, within the right-of-way condemned by the county court for a public highway, if it failed to exercise ordinary care to maintain its gas main in a reasonably safe condition for travel, and to take notice of the kind and type of machinery which might be used for the construction of said road and the changes and improvements constantly being made in all classes of road, as well as the machinery used in improving and constructing same. The duty imposed upon appellant by this declaration of law was predicated upon the county court order condemning the land and authorizing the State Highway Department to enter and reconstruct the road within the designated boundaries of the right-of-way. In other words, the court treated the Highway Department and its contractors as being in the lawful possession of the right-of-way, with a superior right to that of appellant to use the surface, or, to state it differently, that appellant's right to occupy the right-of-way with its pipe line was subservient to the right of the Highway Department to repair and reconstruct the road.

The rule of law announced by the trial court as applicable to the facts in the instant case is supported by the weight of authority, and I do not understand that the majority opinion contravenes the principle of law enunciated, but asserts that the principle was not applicable. The principle or rule announced was applied to the facts in the case of *McWilliams* v. *Kentucky Heating Company,* 166 Ky. 26, 179 S. W. 24, L. R. A., 1916A, 1224. The majority opinion differentiates the instant case from the McWilliams case, and concludes with the statement that the facts in the instant case, according to the undisputed testimony, are insufficient to sustain the verdict and judgment. In interpreting the facts in the instant case the majority opinion, I think, ignores the fact that appellant failed to mark its pipe line so that those rightfully near it might know where it was; and that appellant also failed to notify the Highway Department and the appellee herein of the whereabouts of the pipe line. It knew where its line was, but its deed to the easement for the pipe line did not designate what part of the forty-acre tract it passed through so that others might know from reading it. According to the testimony, it had a line-walker, who passed up and down the line often to ascertain its condition, and who must have seen appellee and his employees working near the pipe line with a large steam shovel that dug into the earth deeper than the pipe line had been buried. Not only had the county court condemned the right-of-way and turned it over to the Highway Department, which extended at least ten feet beyond appellant's pipe line, but the State Engineer had staked off the boundaries of the highway thus condemned. This pipe-line walker must have known that the pipe line was within the right-of-way as staked off by the State Highway Engineer. There can be no question that, had the Highway Department known where the pipe line was and had notified appellant to bury it deeper in the earth, it would have been compelled to do so. This being the case, its right to use the surface was

subservient to that of the Highway Department. It could place its pipe deeper in the earth and accomplish the same purpose as where it was. The highway had to use the dirt on the surface to a depth below where the pipe line was buried to fill in the roadbed. I think the burden rested upon appellant to notify the Highway Department and appellee that its line was within the condemned right-of-way for highway purposes, and, after giving the notice, it was incumbent upon it, under the law, to bury the pipe deeper, if necessary. The majority opinion placed the burden of notice upon appellee and the Highway Department, when neither knew where the pipe line was, and when appellant did know its whereabouts, and that it was within the highway boundary as condemned and staked off. Although the facts are somewhat different in the McWilliams case, yet they are no stronger than the facts in the instant case when viewed most favorably to appellee.

For the reasons given I think the judgment of the circuit court should be affirmed.